(41 App. Div. 419.)

### PEOPLE ex rel. MULVEY v. YORK et al.

(Supreme Court, Appellate Division, Second Department. June 13, 1899.)

MUNICIPAL CORPORATIONS—POLICEMEN—RIGHT TO PENSION.

A New York policeman was placed on the pension roll for life under Laws 1882, c. 410, authorizing the same; section 307 of said act providing that, when he became entitled to retirement and pension, the same was not to be "revoked, repealed, or diminished." Thereafter he removed to New Utrecht, where he was appointed police captain. The latter town was subsequently, by Laws 1894, c. 451, merged in the city of Brooklyn, which act made him eligible for policeman of Brooklyn. He was a patrolman of said city when it was consolidated with New York City, and he became a member of the police force of New York City, under the charter, making members of the police force of Brooklyn members of the police force of Greater New York. *Held* that, in the absence of any limitation upon his employment by the law under which he became a pensioner, the merger of the municipalities did not forfeit his right to said pension.

Bartlett, J., dissenting.

Appeal from special term, Kings county.

Application by the people, on the relation of Thomas Mulvey, for a writ of mandamus against Bernard J. York and others, as police board, etc. From an order granting relator's motion, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Carr, for appellants.
James C. Church, for respondent.

HATCH, J. The facts upon which the relator's right is to be determined are conceded, and the question presented for our solution is purely one of law. The relator was appointed upon the police force of the city of New York in 1870, and served thereon until October 17, 1893, holding at that time the rank of a detective sergeant. On the last-named date he was, upon his own application, relieved, and dismissed from the force, and was placed upon the roll of the police pension fund of such police force, and thereafter received a pension, up to the 1st day of January, 1898, at the rate of $1,000 a year. After relator's retirement from such police force, he went to reside in the town of New Utrecht, and subsequently became a captain of police upon the police force of such town. By chapter 451 of the Laws of 1894 this town was abolished, and its territory was annexed to the city of Brooklyn. By the terms of this act the relator became eligible for appointment upon the police force of the city of Brooklyn, and he was subsequently appointed a patrolman upon such force, continuing to serve thereon until the 1st day of January, 1898. On the latter date the city of Brooklyn was consolidated into the Greater New York. By section 278 of the Greater New York charter, the members of the police force of the city of Brooklyn were transferred to and made members of the police force of the Greater City of New York. Under the transfer thus effected, the relator became a patrolman upon such police force, and as such patrolman is now in service thereon.

The act by virtue of which the relator was retired from the police force in 1893, and pensioned (Laws 1882, c. 410, § 307), required, in order to entitle the applicant to retirement from the force, and to receive a pension, that. he should have performed police duty for a period of 20 years and upward, and that the board of surgeons should certify that the applicant was permanently disabled and unfit for police duty. When these conditions concurred, the relator became entitled to the retirement and pension for and during the term of his natural life, and the same was not to be "revoked, repealed, or diminished." These conditions were found existent in the relator's case. The act granting the pension in no wise limited the exertions which the relator might thereafter put forth to add to his income, nor did it circumscribe the character of employment in which he might engage. He was as free to act in these respects as though he was in receipt of no pension, so far as any limitation by this act was concerned or otherwise. The relator, therefore, had the clear legal right to seek for employment upon the police force of the town of New Utrecht, and accept the same, without in any wise impairing his right to the pension he enjoyed by reason of service rendered upon the police force of New York. It was not of relator's seeking that the town of New Utrecht was abolished, and its police force authorized to be merged into that of the city of Brooklyn. This was a part of the public policy of the state, and was secured by legislative action. The relator, by availing himself of the benefits of such act, did not thereby surrender any. of his rights which he had before enjoyed, except such as followed by change in the grade of his employment. Service upon the police force of Brooklyn secured to the relator the benefits to be derived therefrom, and in no wise changed his status in respect to the police force of the city of New York. This court has already held that the act annexing the territory of New Utrecht did not change the status of the persons affected thereby, but sought, so far as possible, to preserve such status. People v. York, 35 App. Div. 305, 55 N. Y. Supp. 10.

This being relator's position at the time of the adoption of the Greater New York Charter, has such act, and the transfer of the relator thereunder, worked any change? As we have already observed,. the former act of consolidation was not the product of the action of the relator, and his relation to the act creating the Greater City of New York was not different. The act working the change in the police force of the city of Brooklyn, and merging it in that of New York, did not in terms work any forfeiture of any right then possessed by the relator. So far as that act in terms provides, it recognized the status of relator as a patrolman, and in no wise assumed to change his status in any other respect. In other words, it took him as it found him; and it would be a somewhat singular doctrine if, in order to accept an act, which, in part, at least, was passed to secure his tenure in office, he was required to surrender a private right already assured to him by reason of other considerations. Does the fact of change to service under the consolidated city create a condition so irreconcilable as to require the relator to surrender one or the other of his present rights? The condition created, whereby

the relator serves as a patrolman, receives pay as such, and also draws a pension, may be conceded to be somewhat of an anomaly; but such condition is created by act of law, and results from consolidation of the several municipalities. It would in no sense be anomalous if the service was rendered by the relator as patrolman in another jurisdiction, and the anomaly ought not to defeat the right, if it cannot be assailed upon other grounds. It is by no act of his that the present condition has been produced, and in all that he has done he has simply exercised his legal rights.

The pension which has been awarded was based upon service already rendered, having no connection with that which he is now rendering, except in the fact that both are similar in character, and in part within the same jurisdiction. The disability was determined at the time when the pension was awarded. There is, therefore, nothing in the present service which was considered, or could have been considered, in awarding the pension. If this be so, it is difficult now to understand why he should be sacrificed in this regard, when nothing which he is now doing furnished the basis for the pension which he now enjoys, either as ground for withholding or granting. It is quite likely that, in contemplation of the act granting this pension, when it was awarded, it was assumed that connection with the police force was forever at an end, as it would seem to be based upon permanent unfitness for such service. But the act itself under which the pension was given created no such condition. So far as we are advised, there is no prohibition contained either in this or in any other act prohibiting the city of New York from again employing the relator upon its police force, or in any other branch of the city government, or which worked a forfeiture of the relator's rights if he accepted such employment. Nor do we think there would be any illegality in such engagement, or any inconsistency therein. The pension is awarded for past services and disability, and the present service takes none of that away.

When the legislature saw fit to pass a statute which placed the relator in a legal employment, and offered to him its benefits, we think he might accept the same without forfeiture of any emolument which he then had the legal right to enjoy. The claimed contingency, that the relator may, by continual service, come in time to have a right to another pension, is without foundation. It is the evident contemplation of the police pension laws (sections 354, 355, Greater New York Charter) that but one pension shall be received, the amount of which is fixed, and cannot be increased. The reception of this sum, once granted, we think, would clearly limit any right to receive the same by virtue of any future service. As to that already granted, we think the relator entitled to enjoy it, and that his subsequent transfer, by virtue of legislative action, to the police force of the city of New York, did not have the effect of revoking it.

The order should, therefore, be affirmed.

Order affirmed, with $10 costs and disbursements. All concur, except BARTLETT, J., who dissents.