(74 App. Div. 291.)

PEOPLE ex rel. LAHEY v. PARTRIDGE, Police Com'r, et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. CITIES—POLICE—DETECTIVE SERGEANTS—APPOINTMENT BY LEGISLATURE.

Const. art. 10, § 2, provides that all city officers whose election or appointment is not therein otherwise provided for shall be elected by the electors of such cities, or appointed by such authorities, as the legislature shall designate. New York City Charter, § 290, provides for the appointment, by the police board, of patrolmen to act as detective sergeants, but gives such board power to reduce any such detective sergeants to the rank of patrolmen at any time. Laws 1901, c. 466, § 1, provides that the patrolmen occupying the position of detective sergeants on April 1, 1901, shall occupy that position permanently, and not be reduced in rank except in the manner provided for sergeants in the regular police force. *Held*, that the latter act constituted a permanent legislative appointment to a city office, in conflict with Const. art. 10, § 2.

Appeal from special term, New York county.

Mandamus by the people, on relation of William J. Lahey, against John N. Partridge, as commissioner of police of the city of New York, and others, to require respondents to certify relator on the pay roll of the police department as a detective sergeant. From an order granting the writ, respondents appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellants.
Vernon M. Davis, for respondent.

INGRAHAM, J. Upon the 17th day of April, 1901, Michael C. Murphy, the police commissioner of the city of New York, made and promulgated the following order:

"Ordered, that Patrolman William J. Lahey, of the Central Office squad, be, and is hereby, appointed as a detective sergeant, and assigned to duty in the detective bureau as such."

From the date of that order to and including February 1, 1902, the relator performed duty as a detective sergeant in the city of New York. His name appeared upon the pay roll of the department from the date of his appointment to and including the month of December,

1901, and he received the pay fixed for detective sergeants during that period. On or about February 1, 1902, the present commissioner of police furnished the municipal civil service commissioners the pay roll for the month of January, 1902, which contained the name of the relator as a detective sergeant; and the same was duly certified as required by the charter, and transmitted to the municipal commissioners, who refused, however, to attach their certificate to the said pay roll.

The question before us upon this appeal is whether the relator is entitled to the pay of a detective sergeant for the month of January, 1902. Prior to the passage of the charter of the city of New York (chapter 378, Laws 1897), the position of detective sergeant in the police department was regulated by section 265 of the consolidation act (chapter 410, Laws 1882, as amended by section 4, c. 180, Laws 1884). It was there provided that the board of police should maintain and continue a bureau which should be called the "Central Office Bureau of Detectives," and should select and appoint to perform detective duty as many patrolmen, not exceeding 40 in number, as the said board of police might from time to time determine to be necessary to make this branch of the police force efficient.

"The patrolmen so selected and appointed shall be called detective sergeants and shall be assigned to duty at the central office bureau of detectives, and shall while performing such detective duty be vested with the same authority, and be entitled to receive and be paid the same salary each as sergeants of police in the city of New York; but the board of police may, by resolution, reduce to the grade of patrolmen and transfer such detective sergeants or any number of them to perform patrol or other police duty, and when so transferred they shall only be entitled to receive and be paid the same rates of compensation each as patrolmen of the police in said city."

From the time of the passage of this amendment to the consolidation act to the 1st of January, 1898, when the new charter of the city of New York took effect, the detective bureau was organized and continued under this provision. There was no examination required before "selection and appointment" to this position, and their continuance in the detective bureau was, by the provision of the statute, "at the pleasure of the board of police." After being selected and appointed by the police board to act as detective sergeants, and while acting in that capacity, they were entitled to receive the pay of a sergeant of police, but upon being transferred back to patrol duty they were then required to do ordinary patrol duty, and were to receive the pay of a patrolman of their rank.

The new charter of the city of New York, which took effect on January 1, 1898, recognized the position of a detective sergeant as a distinct position in the department. Section 276 provides that the police force, in the police department created by the charter, should "consist of the following members," in which is included "detective sergeants to the number authorized by law." Section 288 continues the provision of the consolidation act for promotions in the department. It is there provided:

"Promotions of officers and members of the police force shall be made by the police board, as provided in section 304 of this act, on grounds of seniority, meritorious police service and superior capacity; and shall be as

follows: sergeants of police shall be selected from among patrolmen assigned to duty as roundsmen, as provided in section 292 of this act; captains from among the sergeants; inspectors from among captains; deputy chiefs of police from among inspectors and captains; and chief of police from among deputy chiefs, inspectors and captains."

But in this list which regulates promotions in the department there is no mention made of the rank of detective sergeant, and, although the position of detective sergeant is recognized by section 276, it does not seem to have been considered a position in the force to which an officer is promoted. By section 304, the civil-service commissioners are required to prescribe the regulations for the admission of persons into the police force; and by subdivision 4 it is provided that "promotions from the lower grades to the higher grades shall be made on the basis of seniority, of merit and of excellence, as shown by competitive examination." There was no provision made for a competitive examination for the position of detective sergeant, and it was still treated as a position temporary in its character. Section 290 of the charter contains a provision for the detective bureau. It is there provided:

"The police board shall maintain a bureau which shall be called the 'Central Office Bureau of Detectives,' and shall select and appoint to perform detective duty therein as many patrolmen as said board may from time to time determine to be necessary to make the bureau efficient. The patrolmen so selected and appointed shall be called detective sergeants, and shall be assigned to duty in that bureau, and while performing such detective duty shall be vested with the same authority and be entitled to receive and be paid the same salary as sergeants of police under this chapter; but the police board may, by order, reduce to the grade of patrolmen, and transfer such detective sergeants or any of them to perform patrol or other police duty, and when so transferred they shall only be entitled to receive and be paid the same rate of compensation as ordinary patrolmen of the police force under this chapter."

The provisions of this section, read in connection with the other sections of the charter to which attention has been called, emphasize the distinction between the position of detective sergeant and that of the other permanent positions in the police force, the promotion to which is regulated by the charter. The duty to be performed by these detective sergeants was entirely different from that performed by patrolmen, or in fact by any other member of the police force. The proper performance of the duty of detective sergeant necessarily depended upon a natural aptitude for the work, which could only be determined by experience, and when an officer, thus detailed, did not show such aptitude or ability, the board of police were authorized to reassign him to duty as a patrolman, and cancel his assignment to the detective bureau. Such a selection was not a promotion in the department as regulated by section 288 of the charter, but it was an appointment to a distinct rank, which entitled the officer to increased pay.

By the amendment of the charter which became a law on April 22, 1901, and took effect on the 1st day of January, 1902, a new section was substituted for section 290 of the charter of 1897. The first section of the act amending the charter (chapter 466, Laws 1901) provides that "Chapter three hundred and seventy-eight of the Laws of eighteen hundred and ninety-seven, entitled," etc., "is hereby amended

so as to read as follows": Section 290, as thus amended, provides that—

"The police commissioner shall maintain a bureau which shall be called the 'Central Office Bureau of Detectives,' and shall select and appoint to perform detective duty therein from the patrolmen or roundsmen as many detectives as the said commissioner may from time to time determine necessary to make that bureau efficient. The patrolmen or roundsmen so selected and appointed, and the patrolmen or roundsmen heretofore selected, appointed or assigned to perform detective duty in the detective bureau, or in what is known as the 'Headquarters Squad,' and who were actually in said bureau or squad on the first day of April, nineteen hundred and one, shall be known as detective sergeants, shall act as such in said bureau, and shall hold the same rank and shall be eligible for promotion in the entire police force in the city, under the same rules and conditions applicable to the promotion of all other sergeants of police in said city, and shall not be reduced in rank or salary except in the manner provided by law for sergeants and other officers of the police force. These patrolmen or roundsmen known as detective sergeants on the first day of April, nineteen hundred and one, as aforesaid, in the detective bureau, shall have the power to draw and be paid the same pay as other sergeants of police."

This amendment confers upon the officers appointed to perform detective duty a permanent rank in the department, whose tenure of office was no longer at the pleasure of the police commissioner, and the individuals to fill that position were designated by the legislature as those who had been acting in said bureau on the 1st of April, 1901. They were not, therefore, to be appointed by the police commissioner, or by any of the authorities of the city of New York. The patrolmen appointed and selected to perform this duty prior to or on the 1st of April, but whose appointment had been revoked prior to the passage of the act, or when such revocation had been made subsequent to its passage, and before it took effect on the 1st day of January, 1902, were designated by the act as the persons who were thenceforth to be detective sergeants, and the positions were filled by the legislature instead of by the city officials. That the officers holding the various positions in the police department in the city of New York are city officers cannot be seriously disputed. The department of which they are members is created by the city charter. Their appointment, removal, and compensation are regulated by that charter, and the compensation of the members of the force is paid by the city. In People v. York, 35 App. Div. 300, 55 N. Y. Supp. 10, it was expressly held that the holders of the various positions in the police department are city officers, and that case was affirmed on the opinion below. 158 N. Y. 670, 52 N. E. 1125. Section 2, art. 10, of the constitution of the state of New York, which took effect on the 1st day of January, 1895, provides that "all city, town and village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose." And we think that section 290 of the charter, as amended by the act of 1901, is in violation of this provision. Prior to the adoption of the present constitution, as we have seen, there was a position of detective sergeant in the department, whose appointment was vested in the board of police. A detective

sergeant appointed to perform detective work held a city office, and although subject to removal from that position, and reassignment to patrol duty, he was entitled to a definite salary, and held a distinct position in the department. This constitutional provision, therefore, applied to this position, and the legislature could not directly appoint persons to fill that position, nor could they vest the power to make such appointment in any state board or officer. Yet, by this amendment, the legislature provides that hereafter these detective sergeants should hold their positions permanently, not subject to the pleasure of the police commissioner, and should consist of those detective sergeants who held the position on the 1st day of April, 1901, before the act was passed. The legislature, not a local authority, therefore, appoints the officers. The case of People v. York, supra, held that an act of the legislature which attempted to make a person who held the position of police captain in the town of New Utrecht a captain in the police department of the city of New York was in violation of this provision of the constitution, and was, therefore, void. In re Benner, 170 N. Y. 185, 63 N. E. 133, the court, in applying this provision of the constitution, cites with approval what was said by Judge Allen in People v. Albertson, 55 N. Y. 50: "As to offices known and in existence at the time of the adoption of the constitution, this provision is absolute in its prohibition of an appointment by the general government or its authority, or by any body other than the local electors, or some local authority designated by law," and says: "This exposition of the scope and purpose of that part of the constitution has been steadily adhered to by this court. That it contains a sound and correct statement of the law on the subject is, we think, not open to question." And it was further held that the restriction "cannot be evaded by changing the name of the office, or by some colorable modification of the functions of the officer as they existed at the time of the adoption of the constitution." We think, therefore, that this amendment of section 290 of the charter was in violation of the constitutional provision, and void. The relator was appointed a detective sergeant on the 17th day of April, 1901. He alleges, and it is not disputed, that since that time he has performed the duties of that position. His appointment was regular, and under the authority of the charter as then in force. He having been regularly appointed a detective sergeant, and having performed that duty, he was entitled to receive the pay of a sergeant of police, and he was entitled to have the pay roll of the department, with his name upon it, properly certified, so that he could receive the pay to which he was entitled.

We think that the relator was entitled to a mandamus requiring the board of civil service commissioners to certify the pay roll so that he would be entitled to receive the compensation provided by law; and, as this was the relief granted in the court below, the order appealed from should be affirmed, with $50 costs and disbursements. All concur.