Matter of the Application of THOMAS MULVEY, Relator, for a Peremptory Writ of Mandamus v. RHINE-LANDER WALDO, as Police Commissioner of the City of New York, Defendant.

(Supreme Court, Kings Special Term, April, 1913.)

Pensions — appointment to police force of city of New York — mandamus.

Pension laws, in the absence of express provisions to the contrary, will be so interpreted as to prevent any person from receiving a double pension.

Relator, appointed to the police force of the city of New York in 1870, was on his own application retired in 1893 and placed on the roll of the police pension fund and received a pension up to January 1, 1898. After his retirement, he became a captain of police of the town of New Utrecht which was abolished by chapter 451 of the Laws of 1894 and its territory annexed to the city of Brooklyn and relator, by the terms of said statute becoming eligible to appointment on the Brooklyn police force, served as patrolman until January 1, 1898, when the city of Brooklyn became a part of Greater New York. By section 278 of the Greater New York Charter, the members of the Brooklyn police force were transferred to and made members of the police force of the city of New York and relator became a patrolman thereof. On mandamus, his right to the continued enjoyment of the pension theretofore granted him was held to be unaffected by his new employment in the city which had granted him the pension, and until

January, 1913, he continued to receive both the old pension and the new salary with increases on promotion. The order retiring him on a pension of $1,125 per annum declared that such pension "is considered to be an increase of $125 over the pension of $1,000" granted in 1893, and relator received the first payment at the increased rate under protest claiming to be entitled to both pensions. *Held,* that his application for a peremptory writ of mandamus directing payment to him in accordance with his claim will be denied.

Petition for peremptory writ of mandamus.

Andrew F. Van Thun, Jr., for petitioner.

James D. Bell and Charles J. Druhan, for respondent.

Kelby, J. The relator was appointed to the police force of the city of New York in 1870, and served thereon until October 17, 1893. He then had the rank of a detective sergeant and was upon his own application relieved and dismissed from the force, and was placed upon the roll of the police pension fund of such police force, and thereafter received a pension up to the 1st day of January, 1898, at the rate of $1,000 a year. After his retirement he went to reside in the town of New Utrecht and subsequently became a captain of police upon the police force of such town. By chapter 451 of the Laws of 1894 this town was abolished and its territory was annexed to the city of Brooklyn. By the terms of this act the relator became eligible for appointment upon the police force of the city of Brooklyn and he was subsequently appointed a patrolman upon such force, continuing to serve thereon until the 1st day of January, 1898. On the latter date the city of Brooklyn was consolidated into the Greater New York. By section 278 of the Greater New York charter (Laws of 1897, chap. 378) the members of the

police force of the city of Brooklyn were transferred to and made members of the police force of the greater city of New York. Under the transfer thus effected, the relator became a patrolman upon such police force.

His right to continued enjoyment of the pension granted to him five years before was then, in proceedings for a mandamus, held to be unaffected by the new employment in the police force of the city which had granted it. See People ex rel. Mulvey v. York, 41 App. Div. 419. In that proceeding it was argued that inasmuch as he had to be retired in order to receive the pension, he would, by necessary implication, have to stay retired in order to keep it. It was, however, held otherwise and he continued until January, 1913, to enjoy both the old pension and the new salary with increases on promotions. He attained the rank of lieutenant. He was then retired and awarded a pension at the rate of $1,125 per annum. The order retiring him declares that such pension '' is considered to be an increase of $125 over the pension of $1,000,'' granted in 1893. The relator received the first payment at the increased rate under protest, claiming to be entitled to the pension of $1,125, awarded in 1913, and also to the pension of $1,000, awarded in 1893. On refusal, by the police commissioner, of payment, the relator moves for a peremptory writ of mandamus, directing payment to him in accordance with his claim. Thus the contingency which, on the previous proceeding, was urged as a possibility, that the relator might by continued service on the force of the greater city come in time to claim a right to another pension (see 41 App. Div. 420) has become a fact. No authority is cited by the relator in support of his claim, but he argues that it necessarily follows from the logic of the decision on the former application. He questions, as *dictum,* the force of what the court then said in answer

to the argument of possible future claim to a double pension, that it was " the evident contemplation of the police pension laws that but one pension shall be received," the reception of which " would clearly limit the right to receive the same by virtue of any further service." He asserts that there is nothing in the pension law that prohibits him from having his old pension together with the one the commissioner has now given him. I am of opinion that there does not have to be any prohibition to prevent a double pension under the police pension law. The *dictum* of the court above given is in accordance with the general rule, in respect to all pension laws, that, in the absence of express provision to the contrary, they will be so interpreted as to prevent any person from receiving a double pension. 30 Cyc. 1373. See, also, 4 Op. Atty.-Gen. U. S. 91, 357; Decatur v. Paulding, 14 Pet. 497; United States v. Teller, 107 U. S. 64. In the first case (4 Op. Att.-Gen. U. S. 91) an executive construction of an act of congress as against double pensions to widows of soldiers was said to be " according to the general principles of our republican policy, adverse to pensions at best, and particularly adverse to double pensions." In Decatur v. Paulding, the widow of Commodore Stephen Decatur sought by mandamus to compel the payment of a pension to her, under a general law of congress, in addition to one she was receiving under a special law. The writ was denied. In United States v. Teller, involving the claim to a double pension of General Burnett, it was held competent for congress to pass a declaratory statute that no person should receive a pension under a general law if he was in receipt of one under a special law.

With this general rule of interpretation in mind, a scrutiny of the language of the charter governing the police pension fund leads to no other conclusion. A

single pension fund, consolidating those of the consolidated municipalities, is provided for. "Service" in the police force of the older municipalities is to "be counted and held to be service" in the police force of the consolidated city, and, by words speaking in the singular number, "*an* annual pension" is to be paid to a police officer, entitled by such service to be once "placed" on the pension roll.

Writ denied.