[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
The original title of the defendant to the office of collector of Flatbush rested upon an election by the electors of that town at the town meeting held April 5th, 1870.
The duration of his term was prescribed by law. He was a town officer, and the statute then in force declared that town officers should hold their offices for one year, "and until others were chosen or appointed in their places and have qualified." (1 R.S., 347, § 30.)
The defendant was elected for this statutory term, and when he assumed the office this statute defined and limited the period during which he should hold under that election.
The law provided also for the election of a successor at the next annual town meeting, and, in default of an election, for an appointment by three justices of the town. (§ 31.)
The defendant has continued to act as collector of the town of Flatbush from the time of his election in 1870, and *Page 377 
his right to hold the office after the expiration of a year from his election being challenged, he asserts his title on two grounds: First. That his term of office was extended by an act of the legislature passed April 22d 1870, and, Second. That without the aid of that statute he is lawfully holding over, no successor having been chosen or appointed who has qualified so as to entitle him to hold the office.
The legislature in 1870, after the election of the defendant, passed the act by which his term of office is claimed to have been extended. It is entitled. "An act for the extension of the term of office of collector of taxes in the several towns of King's county." (Laws 1870, chap. 364.)
The first section is as follows: "The collectors of taxes in the several towns of the county of Kings shall hold their office for the term of three years, and until others are chosen or appointed in their places and have qualified."
Assuming that the act is to be construed as extending the term of the existing incumbents of the office of collector, the question arises as to the constitutional validity of the enactment for that purpose, within section 2 of article 10 of the Constitution.
That section declares, that "All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose."
The subsequent part of this section, which prescribes the manner of filling offices thereafter to be created, has no application to this case. The office of town collector existed when the first Constitution of the State was formed. It has been continued since that time. For the whole period it has been an elective office, and the statute under which the defendant was elected was in force when the Constitution of 1846 was adopted.
Town collectors were town officers whose election or appointment was not provided for by the Constitution, and *Page 378 
this office could thereafter be filled in no other way than by election by electors of the town, or by appointment made by local authorities of the town, to be designated by the legislature.
The obvious purpose of the provision of the Constitution which has been quoted was to secure to the people of the cities, towns or villages of the State the right to have their local offices administered by officers selected by themselves, and in no case was it to be done by officers appointed by the direct action of the legislature.
The power of the legislature over the subject was not wholly withdrawn. It was left to the legislature to decide as to which of the two modes of selection should be adopted. It could change the mode of selection from an election to an appointment by local authorities, or from an appointment to an election. It could declare the duration of the term of office in cases where the Constitution was silent; it could shorten the term of an incumbent of the office, and could abolish the office itself unless it existed by force of the Constitution. But it could not appoint a city, town or village officer, in any case where the office existed at the adoption of the Constitution.
It could not do this directly, or under color of any other power conferred by the Constitution, which was not in substance a qualification of or exception to the plain injunction contained in the provision under consideration.
The purpose of this provision to secure local government through the local constituency is in harmony with the other provisions of the Constitution of 1846.
By the eighteenth section of the sixth article it is declared that "All judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such times and in such manner as the legislature may direct."
This section came under the consideration of this court in the case of The People ex rel. Hill v. Bull (46 N.Y., 57), and the court held that an act of the legislature extending the term of the incumbent of the office of justice of a district *Page 379 
court in the city of New York, which he held by election at the time the act was passed, was in conflict with this section of the Constitution.
It was held to be in substance an appointment by the legislature to the office for the extended term, and a usurpation, by that body, of the right to fill the office which was secured by the Constitution to the electors; and the argument was rejected that it could be done under the power to fix the duration of the term.
There is no sound distinction in principle between that case and this.
The Constitution fixed the manner of selecting judicial officers of cities and villages. It left it to the legislature to determine which of two modes should be adopted for filling other city, town or village offices.
The legislature could not, in the one case more than the other, directly or indirectly appoint an officer; and the extension of the term of an incumbent was in either case an attempt to exercise the power of appointment.
If the term of the defendant was extended by the act in question, he would hold for two years as the appointee of the legislature, and not by the act of the electors.
It is suggested that the act of 1870 may be construed as repealing the provisions of the statute requiring an annual election of collectors in the county of Kings, and as postponing another election till 1874, and that in this view the defendant holds over by virtue of his original election, and the provision of the statute which declares that town officers shall held their offices until others are chosen.
The act of 1870 did not, in terms, repeal the law providing for the annual election of town officers.
It was not repealed by implication as to the election to be held in 1870, for as the act was void as an extension of the term of the incumbents, there is no ground upon which the repeal by implication can be based.
The case of The People v. Batchelor (22 N.Y., 128) supports the position of the defendant as to the constitutionality *Page 380 
of the act of 1870, but that case cannot be followed as authority in view of the decision in The People v. Bull.
It follows that an election for town collector of Flatbush was properly held in 1871, and it is not denied that the relator, if an election could have been held in that year, was duly elected to the office.
But the second ground upon which the defendant asserts his title to the office is that the relator has not taken the oath of office.
The provision of the general statute has been cited which declares, that "town officers shall hold their offices for one year, and until others are chosen or appointed in their places and have qualified." (1 R.S., 347, § 30.)
It is admitted that the relator has not taken an oath of office. To qualify for an office, means to take an oath of office, and the section implies that this duty rests upon all persons chosen or appointed town officers. There is no statute enjoining upon a town collector the duty of taking an official oath, but I am of opinion that this duty is imposed upon town officers by the Constitution.
The Constitution, article 12, provides that members of the legislature, and all officers, executive and judicial, except such inferior officers as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe an oath of office. This article follows those relating to the election or appointment of State, county, city, town and village officers.
It is not confined in its application to State officers or those having general authority throughout the State. It comprehends all officers, legislative, judicial or executive, but authorizes the legislature to exempt inferior officers from the obligation to take the oath.
The collector of a town is an executive officer. He is clothed with a subordinate though important agency in the execution of the laws. He can seize and sell the property of the citizen, as a means of enforcing the payment of taxes which he is authorized to collect. He exercises a ministerial, *Page 381 
as distinguished from a judicial power, but his duties are executive.
The Constitution established the general rule that the civil officers of the State should act under the sanction of an official oath, subject to such exceptions, in cases of inferior officers, as the legislature should create. The fact that the statute requires that certain town officers shall take the oath of office, while it omits such a requirement as to the collector, does not impair the force of the view here taken.
The Constitution does not declare the consequences of an omission by an officer to take the oath of office. The thirteenth section of the statute relating to town officers (1 R.S., 345) requires the supervisor and certain officers to take the oath within ten days after notice of the election, and declares (§ 16) that a neglect to do so shall be deemed a refusal to serve.
The nineteenth section requires the collector, within eight days after notice of the amount of taxes to be collected, to execute a bond to the supervisor of the town; and a neglect to do so is to be deemed a refusal to serve. (§ 24.)
So, an omission by the overseer of highways or commissioner or inspector of common schools to file, within a given time, a written acceptance of his office, shall be deemed a refusal to serve. (§ 17.)
The statute also provides for filling vacancies in office; and a refusal of an officer to serve creates a vacancy.
The object of the sections referred to is obvious. They were designed to prescribe what act should constitute a refusal to serve, so as to authorize a new selection or appointment.
They declare the consequence of an omission of an officer to do the act prescribed, and were not designed to exempt any town officer from the obligation to take the oath of office.
The duty of a collector is confined to executing the warrant for the collection of taxes. This is not issued until the fall or winter succeeding his election. There is no public interest *Page 382 
which requires that he should qualify before his active duties are to commence; and although he cannot act until the oath is taken, the vacancy is made to depend upon his neglect to file the bond required by the statute.
The general policy of the State is and has been that all public officers should take an oath of office. The twelfth article of the Constitution was designed to declare a uniform rule upon the subject, applicable to all officers, superior or inferior, belonging to either of the three departments of government, executive, legislative or judicial.
The thirty-second section of the statute, regulating proceedings by quo warranto (2 R.S., 582) to ascertain the title to office, assumes that all public officers are bound to take an oath of office.
If the relator claims the office, and judgment passes in his favor, the section declares that he shall be entitled to take upon him the execution of the office, "after taking the oath of office, and executing any official bond which may be required by law."
The relator not having qualified, the defendant was rightfully executing the duties of the office of collector when this action was commenced. But the relator did not forfeit the office by the omission to take the oath; nor had he lost it by reason of his not having executed a bond to the supervisor.
No notice had been given him of the amount of taxes to be collected, and he had eight days after such notice to execute the bond. The statute does not declare by whom the notice is to be given.
The act of 1813 relative to towns (2 R.L., 125), which, in substance, was re-enacted by the Revised Statutes, made it the duty of the supervisor of the town to notify the collector.
The officer is not bound to take notice of the proceedings of the board of supervisors in fixing the amount of the tax list; and actual notice must be given him, either by the board of supervisors or by the supervisor of the town, before he is put in default for not executing the bond.
The effect of the act of 1870 was, I think, to make the *Page 383 
term of office of collectors in Kings county, thereafter to be elected, three years. It may have been designed also to enlarge the term of the incumbents. If capable of such a construction it was, so far, void. But courts are bound to construe statutes so that they shall have effect.
The act plainly was intended to govern the term of officers thereafter to be elected, and was, so far, a valid exercise of legislative power.
The order of the General Term was appealable to this court.
It was, in effect, an order denying a new trial, and can be reviewed by the court before judgment entered in the action.
Judgment should be directed, declaring the rights of the parties in accordance with this opinion.
All concur, except ALLEN, J., dissenting.
Judgment accordingly.