The People of the State of New York ex rel. George N. Balcom, Appellant, *v.* William H. Mosher et al., Constituting the Board of Street Commissioners of the City of Binghamton, Respondents.

1. Constitutional Law — Civil Service — Art. V, § 9, Construed. Section 9 of article V of the Constitution of the state of New York, providing that "appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascertained, so far as practicable, by examinations which, so far as practicable, shall be competitive," must be construed in connection with section 2 of article X, providing that "all city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the Legislature shall designate for that purpose;" and, as thus construed, does not take away such power of appointment or change the officers or bodies who are to make the appointments, but relates only to the qualifications which appointees shall have to justify their appointment under said section 2, and the manner in which they shall be ascertained.

2. Statute Requiring Appointment of Person Highest on List Unconstitutional. The provision of the Civil Service Law (L. 1899, ch. 370, § 13), that "appointments shall be made * * * by appointment of *those graded highest* in open competitive examinations conducted by the state or municipal commission," is unconstitutional, since the right of appointment of necessity involves the power of selection and the exercise of discretion and judgment, and the limitation of the right of appointment to the person graded highest would transfer the real power of appointment from the local authorities to the civil service commission, and thus completely nullify that provision of the Constitution which confers the power of appointing city officers upon the local authorities of the municipality.

*People ex rel. Balcom* v. *Mosher*, 45 App. Div. 68, affirmed.

(Argued February 26, 1900; decided May 1, 1900.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 28, 1899, reversing an order of Special Term granting a peremptory writ of mandamus commanding the defendants to appoint the relator to the position of superin-

tendent of streets and city property of the city of Bingham-
ton for a probationary term of two months, and denying the
motion for such writ.

The charter of that city provides that the mayor shall
appoint four commissioners who shall constitute a board to be
known as the board of street commissioners of the city of Bing-
hamton; that it shall have the management and control of the
street department, and its powers and duties are defined. It
then declares that on the second Tuesday in February of every
alternate year the board shall appoint a superintendent of
streets and city property for the term of two years, who shall
receive an annual salary of one thousand dollars, and defines
the duties of the superintendent, which are important and are
of great interest to the welfare and proper management of the
streets and property of the city. He is also required to give a
bond, to be approved by the mayor, for the faithful discharge
of his duties. (§§ 1, 2, 3, 4, 5.)

The position of superintendent became vacant February 1,
1899, by the expiration of the term of the previous incum-
bent. In the following April the municipal civil service com-
mission certified to the board of street commissioners the
names of three persons appearing upon the eligible list pre-
pared by the commission as the result of a competitive exami-
nation therefor. Upon the list were the names of Bolles,
Balcom and Seabury. Bolles stood highest, Balcom next and
Seabury last. Balcom and Seabury were both honorably-dis-
charged soldiers of the army during the late Civil war, and as
such were entitled to preference over Bolles.

Rule fourteen of the local civil service commission, which
was approved by the mayor and by the state civil service com-
mission in 1898, provided that when any officer having the
power of appointment to or employment in any position in
Schedule B (the competitive class) so requests, the commission
shall certify to him the names as soon as practicable of three
persons having the highest standing upon the eligible list, and
the appointing officer shall thereupon appoint to the vacant
position one of the three persons so certified to him, subject

34          People ex rel. Balcom v. Mosher.          [May,

Statement of case.                          [Vol. 163.

to any and all laws of the state of New York in relation to honorably-discharged soldiers or marines of the Civil war, giving them preference under the civil service rules.

On April 19, 1899, the legislature passed an act in relation to the civil service of the state which took effect immediately. (L. 1899, ch. 370.)    By section thirteen it is provided: " Appointments shall be made to or employment shall be given in all positions in the competitive class that are not filled by promotion, reinstatement, transfer or reduction under the provisions of this act and the rules in pursuance thereof, by appointment of *those graded highest* in open competitive examinations conducted by the state or municipal commission, except as herein otherwise provided."

The state civil service rule relating to this subject is in effect a repetition of the statute itself.    (Rule 8.)    That the appointment of a superintendent is to be controlled by the statute of 1899, if valid, seems to be conceded by both parties.

The Special Term held that the Civil Service Law of 1899 was constitutional, and that it required the street commissioners to appoint to the office of street superintendent the veteran who stood highest upon the eligible list furnished by the local civil service commissioners.    Upon appeal the Appellate Division held that the act of 1899 was unconstitutional so far as it required the appointment of the person standing highest upon such list, and reversed the judgment of the Special Term.

*Samuel H. Ordway* for appellant.    The Civil Service Law is not unconstitutional, in so far as it requires the appointment, for a probationary term, of the person graded highest as the result of open competitive examinations, in those cases where the legislature has determined that open competitive examinations are practicable.    (*People ex rel.* v. *Angle,* 109 N. Y. 564; *Rogers* v. *Common Council,* 123 N. Y. 173; *People ex rel.* v. *Roberts,* 148 N. Y. 360; *Matter of Keymer,* 148 N. Y. 219; *Rathbone* v. *Wirth,* 150 N. Y. 459; *People*

*ex rel.* v. *Clute*, 50 N. Y. 451; *People ex rel.* v. *Albertson*, 55 N. Y. 50.)   The Civil Service Law is not unconstitutional, in so far as it requires the appointment, as between two or more veterans upon the eligible list, of that one among them who is graded highest. (*People ex rel.* v. *Common Council*, 26 Misc. Rep. 522; *Matter of Keymer*, 148 N. Y. 219.)

*A. M. Sperry* for respondents.   The power to appoint is a discretionary power, with which courts never interfere. (*Achley's Case*, 4 Abb. Pr. 35; *People ex rel.* v. *Fitzsimmons*, 68 N. Y. 514; *People ex rel.* v. *Murray*, 70 N. Y. 521; *Judges, etc.*, v. *People*, 18 Wend. 79.)   The power to appoint is constitutional and cannot be limited by act of legislature so as to take the essence from it. (*Menges* v. *City of Albany*, 56 N. Y. 374; *Rathbone* v. *Wirth*, 150 N. Y. 459.)   A construction of the Civil Service Law that makes merit and fitness depend entirely upon the result of a written examination does violence to the spirit and plain intent of the Constitution. (*People ex rel.* v. *Lyman*, 157 N. Y. 368; Fifteenth Report of N. Y. Civil Service Comrs.)   Under the Constitution veterans are given a preference over civilians, but there is no such preference among themselves. (*People ex rel.* v. *Morton*, 148 N. Y. 156.)   The Civil Service Law of 1899 is unconstitutional in that it provides absolutely and unconditionally for the appointment of the one standing highest upon a civil service examination. (*People ex rel.* v. *Lyman*, 157 N. Y. 368.)

MARTIN, J.   The only controversy upon this appeal relates to the constitutionality of the civil service statute of 1899. The question involved is the power of the legislature to abrogate the right conferred by the State Constitution upon the local authorities of a city to appoint such of its officers as are not directed by the Constitution to be elected or otherwise appointed. (§ 2, art. 10.)

The office of superintendent of streets and city property of the city of Binghamton falls within that statute, and, if valid, it is controlling as to the appointment of an incumbent of that

office.    The provisions of the Constitution, by which its validity is to be tested, are section 2 of article 10 and section 9 of article 5.

Section two provides : " All city   *   *   *   officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities,   *   *   *  or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose ; " while section nine declares : " Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive ;   provided,   however,   that   honorably   discharged soldiers and sailors from the army and navy of the United States in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made."

In interpreting the Constitution, it is to be considered as a whole, complete in itself ; force is to be given to every provision contained in it, and each clause explained and qualified by every other.    The words used must be presumed to have been employed in their natural and ordinary meaning,  and if different portions seem to be in conflict they must be harmonized if possible, and that construction adopted which will render every provision operative rather than one which will make some idle or nugatory. (*Gilbert El. R'way Co.* v. *Anderson*, 3 Abb. [N. C.] 434 ; *People ex rel. Killeen* v. *Angle*, 109 N. Y. 564, 575 ; *People ex rel. McClelland* v. *Roberts*, 148 N. Y. 360, 367 ; *People* v. *Rathbone*, 145 N. Y. 434, 440 ; *In re Smith* v. *Board of Supervisors*, 148 N. Y. 187, 189 ; Cooley on Constitutional Limitations, 58.)

Therefore, these two provisions should be construed together, giving force to both and to each should be accorded its appropriate place and proper effect, with some office to perform, and at the same time they should be so construed as

to operate harmoniously. We find no repugnancy between these sections of the Constitution. Section two has been a part of the organic law of the state for many years, and obviously it was not intended to be superseded or changed as no language was employed in the Constitution of 1894 to indicate any such purpose. Moreover, the proceedings of the constitutional convention show that it was intended to be continued in force in its existing form. Section nine was an amendment adopted in 1894. Both being part of the present Constitution, the most that can be claimed is that they should be read and construed together. Reading the amendment of 1894 into section two, it in effect provides that all city officers whose election or appointment is not otherwise provided for by the Constitution shall be appointed by such authorities thereof as the legislature shall designate for that purpose, which appointments shall be made according to merit and fitness to be ascertained by competitive examinations so far as practicable. When thus read, it becomes manifest that under the Constitution the power of appointment still remains in such local authorities as the legislature has designated for that purpose. No alteration in that respect has been made or attempted. The only change effected by the amendment of 1894 is the requirement that the local authorities in making such appointments shall make them " according to merit and fitness," to be ascertained by examinations, competitive or otherwise. The amendment relates only to the qualifications which appointees shall possess to justify their appointment under section two, and the manner in which they shall be ascertained. Thus the power of appointment is still vested in the local authorities of the various municipalities of the state, and the amendment has wrought no change as to the officers or bodies who are to make such appointments. The result is the same whether these sections are read together or separately. Section two in direct terms provides that such appointments shall be made by the local authorities. Section nine plainly recognizes that method of appointment by providing for appointments in the civil service without any designation, express or

implied, of any new or other authority by which they are to be made. All that is provided by that section is that appointments made by the proper appointing power are to be according to merit and fitness, but it in no way attempts to change or interfere with the authorities who are to make them. These provisions of the Constitution show quite conclusively that the appointment of city officers whose election or appointment is not otherwise provided for by the Constitution must still be made by such local authorities of the city as the legislature has designated for that purpose. While the legislature is authorized to designate the local authorities who are to appoint, yet, when they are thus designated their actual power becomes constitutional and is controlled by that instrument. In this case the local authorities so designated to appoint a superintendent of streets and city property were the board of street commissioners of the city of Binghamton, and, hence, that board alone had power under the Constitution to make an appointment to fill that office. Yet the Special Term, without permitting it to in any way exercise that power, held the statute of 1899 to be valid, and that under it the board had no right of selection or choice between the several candidates certified as eligible to the place or between the two veterans who were so certified, but that it was absolutely bound to appoint the one veteran graded highest by the civil service commission and granted a peremptory mandamus commanding the board to appoint that person.

If the civil service commissioners have power to certify to the appointing officers only one applicant of several who are eligible and whom they have, by their own methods, ascertained to be fitted for a particular position, and their decision is final, or if where more are certified the one graded highest must be appointed, then the civil service commission becomes and is the actual appointing power. To reach such a result, however, it must be held that the word "appointment" as used in the Constitution is not to be given its usual and ordinary meaning, but may be so limited and restricted as to leave in the local authorities a mere ministerial duty, with no dis-

cretion, nor choice, nor responsibility in respect to the person to be appointed. Such a construction would completely nullify the provision of the Constitution which confers the power of appointing city officers upon the local authorities of the municipality. A fair reading of the Constitution leads to no such result.

Early in the history of the civil service reform in this country the signification of the word "appointed" was considered in connection with the United States civil service statute. The United States attorney-general in discussing that question said: "If to appoint is merely to do a formal act, that is, merely to authenticate a selection not made by the appointing power, then there is no constitutional objection to the designation of officers by a competitive examination, or any other mode of selection which Congress may prescribe or authorize. But if appointment implies an exercise of judgment and will, the officer must be selected according to the judgment and will of the person or body in whom the appointing power is vested by the Constitution, and a mode of selection which gives no room for the exercise of that judgment and will is inadmissible. If the President, in appointing a marshal, if the Senate in appointing its secretary, if a court or head of department in appointing a clerk, must take the individual whom a civil service board adjudge to have proved himself the fittest by the test of a competitive examination, the will and judgment which determine that appointment are not the will and judgment of the President, of the Senate, of the court, or of the head of department, but are the will and judgment of the civil service board, and that board is virtually the appointing power." (Opinions U. S. Atty. Gen., vol. 13, p. 516.)

A subsequent report of the United States civil service commission contained the following statement upon this subject: "The appointing power, conferred by Congress upon the heads of departments, under the strict terms of the Constitution, is a power of choice — a right of selection for appointment from among several. That opportunity of choice

is inseparable from the power itself.   *   *   *   A choice between four seems to preserve the authority of the appointing power, and to allow a sufficient variety of capacity for answering the needs of the public business.  For both these reasons, a requirement that the applicant graded highest be taken would be indefensible."   (Report of 1884.)

When we examine the report of the civil service commission of this state we find that it is said : " It is a wise provision that the commission has no power to make appointments or removals, or even to recommend persons for appointment. Any authority of that character would be fatal to its usefulness, and an unwarrantable interference with sound principles of administration.  Its sole duty in its subordinate sphere is to ascertain the fitness or qualifications of applicants for the service.  The appointing power of all public officers remains unimpaired, and should so remain.  But the field of selection is limited to those who have been ascertained to be qualified." (Report 1885.)

The decisions of this and other courts, State and Federal, as to the meaning of the word "appointment," and what constitutes an appointment under the law, are to the effect that the choice of a person to fill an office constitutes the essence of the appointment ; that the selection must be the discretionary act of the officer or board clothed with the power of appointment ; that while he or it may listen to the recommendation or advice of others, yet the selection must finally be his or its act, which has never been regarded or held to be ministerial. (19 Am. & Eng. Encyclo. of Law, 423 ; *Johnston* v. *Wilson,* 2 N. H. 202 ; *Hoke* v. *Field,* 10 Bush [Ky.], 144 ; *People* v. *Fitzsimmons,* 68 N. Y. 514 ; *Marbury* v. *Madison,* 1 Cranch [U. S.], 137 ; *Craig* v. *Norfolk,* 1 Mod. 122 ; *People ex rel. Babcock* v. *Murray,* 70 N. Y. 521 ; *Taylor* v. *Kercheval,* 82 Fed. Rep. 497, 499 ; *Menges* v. *City of Albany,* 56 N. Y. 374 ; *People ex rel. Killeen* v. *Angle,* 109 N. Y. 564, 573.)  Thus it is seen that the authorities upon the subject and the opinions of those who have been connected with the civil service reform from its inception all agree in the conclusion that the

power of selection for a public office is and should be vested alone in the officers or boards authorized to appoint, although it be limited to persons possessing the qualifications required by the civil service statutes and rules, and that at least some power of selection is necessary to constitute an appointment, which should be exercised by the local authorities, independently of the civil service commission.

In *Rathbone* v. *Wirth* (150 N. Y. 459, 468) section 2 of article 10 was under consideration by this court, and its purpose and force were there discussed. In delivering an opinion in that case Judge GRAY said : " The legislature is expressly authorized to designate the local authority, who shall appoint the local officers, and it is impliedly prohibited from doing more than that, or from placing limitations upon this power of appointment. \* \* \* ' Every positive direction contains an implication against anything contrary to it ; or which would frustrate, or disappoint, the purpose of that provision.' " (*People* v. *Draper*, 15 N. Y. 544.) In further discussing that section and its purpose, the case of *People ex rel. Williamson* v. *McKinney* (52 N. Y. 374) was cited, where Judge ANDREWS said : " The obvious purpose of the provision of the Constitution which has been quoted (§ 2, art. 10), was to secure to the people of the cities, towns or villages of the state the right to have their local offices administered by officers selected by themselves." He also quotes from the opinion of Judge ALLEN, in *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50), the following language : " The theory of the Constitution is, that the several counties, cities, towns and villages are, of right, entitled to choose whom they will have to rule over them ; and that this right cannot be taken from them and the electors and inhabitants disfranchised by any act of the legislature, or of any or all the departments of the state government combined."

Assuming, then, in the further discussion of this question, that the purpose of this provision of the Constitution was to vest in the local authorities designated by the legislature the power of appointment and to secure to each municipality the

**42**   People ex rel. Balcom *v.* Mosher.   · [May,

Opinion of the Court, per Martin, J.   [Vol. 163.

right of self-government, we are led to an examination of the statute of 1899 in the light of these constitutional provisions and the decisions under them. As we have already seen, the right of appointment, of necessity, involves the power of selection and the exercise of discretion and judgment. Without that power in no just sense can it be said that the right exists. If the act of 1899 is valid and bears the construction accorded to it by the Special Term, then the local authorities designated by the legislature to appoint a superintendent of streets and city property are absolutely deprived of any power of selection, but are required to name the person graded highest. In other words, the real power of appointment is transferred from the authorities in which it is vested by the Constitution to the civil service commissioners.

Moreover, by section ten of the act of 1899, if the mayor for any reason fails to appoint municipal civil service commissioners, the right to appoint them is conferred upon the state commission until the expiration of the term of the mayor then in office, and until their successors are appointed and qualify. The state commissioners are also authorized to remove any municipal civil service commissioner for cause. Therefore, there may be circumstances under which the selection of all the appointive officers of a city will be controlled by the state civil service commissioners, and thus the people and the local authorities of the municipality be deprived of any voice in the selection of its officers. If it be said that no such condition has arisen in this case, the answer is that the validity of this statute must be determined by the nature, character and scope of the powers attempted to be conferred, although they may not have been actually exercised. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Coxe* v. *State*, 144 N. Y. 396; *Gilman* v. *Tucker*, 128 N. Y. 190; *Colon* v. *Lisk*, 153 N. Y. 188, 194.)

I fancy it would be difficult to imagine a construction of the Constitution which would more completely surprise the inhabitants of the various municipalities or political divisions of the state, or that would work greater injury to fair and proper civil service reform, than one which should hold that

the principle of local self-government for the cities, villages and other municipalities of the state has been so far abrogated by the amendment of 1894 that the power of appointment of their local officers may be transferred from the local authorities to a centralized commission of state appointees and thus the principle of local self-government practically destroyed.

Although this court in effect held that the statute of 1883 and the rules adopted by the civil service commissioners under it, which required that officers to be appointed should be selected from the highest three on the eligible list, was valid (*People ex rel. McClelland* v. *Roberts*, 148 N. Y. 360; *Chittenden* v. *Wurster*, 152 N. Y. 345, 358), still, when the legislature has, by statute, undertaken to deprive the local authorities of all right of selection and appointment, it has exceeded its constitutional power and the act is clearly in conflict with the provisions of the organic law and invalid.

While there are other considerations and authorities bearing upon this question leading to the same result, yet, in view of the careful opinion of the learned Appellate Division and the recent decisions of this court relating to the history, purpose and effect of the civil service statutes and the amendment of the Constitution, we deem further discussion of this question quite unnecessary.

The order should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN and HAIGHT, JJ., concur; BARTLETT and VANN, JJ., not voting; LANDON, J., not sitting.

Order affirmed.