PEOPLE ex rel. SULLIVAN v. MAYOR, ETC., OF CITY OF NEW YORK.

PEOPLE ex rel. DENYSE v. SAME.

(Supreme Court, Special Term, Richmond County. September 13, 1910.)

1. COUNTIES (§ 62*) — CLERKS — ASSISTANTS — APPOINTMENT—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Laws 1909, c. 513, changed the clerk's office of Richmond county to a salaried office, and by section 6 gave the clerk power to appoint all assistants subject to the civil service law, by section 2 provided that the salaries of appointees to the clerk's office were to be fixed by the board of estimate and apportionment, and by section 11 provided that every assistant employed in the clerk's office on January 1, 1909, and continuing in employment till the act took effect, and who prior to January 1, 1910. passed a noncompetitive civil service examination, should be retained and assigned to perform the same services in the clerk's office. The board of estimate and apportionment, acting under Greater New York Charter (Laws 1901, c. 466) § 226, in making up its budget of appropriations for 1910, allowed for three clerks at $1,200, and on request of the county

---

*For other·cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clerk recommended two additional clerks at $1,000. No appointment was made to either of these additional clerkships before July 31, 1910. Relator was a copyist in the clerk's office on January 1, 1909, and, after passing a noncompetitive examination, was assigned to the same work, and, after the appropriation made by the board of estimate and apportionment, he applied for mandamus to the board to fix his salary under the act. *Held*, in view of Const. art. 5, § 9, which requires all appointments to be ascertained by noncompetitive examination, that section 11 did not compel the clerk to retain in office all those employed on January 1, 1909, but conferred upon the clerk the right of appointment, subject to the civil service law, and that before appointment to the clerkships provided for by the board, the board was not required under the act to fix relator's salary.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 62.*]

2. OFFICERS (§ 8*)—POWER TO APPOINT TO OFFICE.
    The power to appoint to office involves the exercise of choice in respect to the appointee.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 10; Dec. Dig. § 8.*]

3. COUNTIES (§ 64*) — CLERKS—ASSISTANTS—APPOINTMENT—QUALIFICATIONS—CIVIL SERVICE LAWS—EXAMINATION.
    Under Laws 1909, c. 513, § 11, providing that every clerk or assistant employed in the office of the Richmond county clerk January 1, 1909, and continuing in office until the act took effect, and who prior to January 1, 1910, passed a noncompetitive civil service examination, should be retained and assigned to perform the same services in the clerk's office, an incumbent in the clerk's office on January 1, 1909, who failed to pass a noncompetitive civil service examination before January 1, 1910, but who was re-examined and finally passed in February, is not qualified for appointment under the terms of the act.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 64.*]

Motions by the People of the State of New York, on the relation of Sullivan, and by the People, on the relation of Denyse, for a peremptory writ of mandamus to the mayor, etc., to fix salaries of relators. Motions denied.

J. Harry Tiernan, for relators.
Archibald R. Watson, Corp. Counsel, and Elliott S. Benedict, Asst. Corp. Counsel, for defendant.

PUTNAM, J. [1] Chapter 513 of the Laws of 1909 changed the clerk's office of Richmond county to a salaried office. Section 6 gave such clerk the power to appoint all deputies, clerks, and other employés and assistants in his office subject to the provisions of the civil service law, but section 11 declared:

"Each and every assistant, clerk, searcher, copyist, comparing clerk, custodian, messenger, or other subordinate, who on the first day of January, nineteen hundred and nine, was employed in the office of the clerk of the county of Richmond, and who shall continue to be so employed at the time this act shall take effect, and who shall prior to the first day of January, nineteen hundred and ten, have successfully passed a noncompetitive civil service examination under the civil service law, in accordance with the rules and regulations prepared by the state civil service commission, shall be retained and assigned to perform the same service in the office of the clerk of the said county of Richmond."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The relator Sullivan prior to January 1, 1909, was a clerk employed as a copyist by the clerk of Richmond county, and so continued through that year, and before January 1, 1910, had passed a noncompetitive examination. He alleges that thereafter he had been assigned to perform the same services as copyist. In anticipation of the change in the county clerk's office, the city budget made up in 1909 for the year 1910 provided, in addition to the usual offices of county clerk, deputy county clerk, court clerk, and assistant court clerk, for three clerks at $1,200 each and a searcher at $1,500. However, on December 31, 1909, under the fee system there were 16 clerks whose compensation was not fixed. On December 18th, the county clerk had asked that, in addition to the clerks provided for in the budget, the board of estimate and apportionment create additional positions of six clerks, two comparing clerks, and one custodian—a request repeated in February, 1910. The finance department of the city caused an investigation to be made, with the result that it recommended but two additional clerkships. Accordingly the board of estimate and apportionment declined the increase sought, but fixed the additional clerkships at a yearly salary of $1,000. By the affidavit of William M. Lawrence, assistant secretary of the board of estimate and apportionment, it appears that no persons have been appointed to either of these positions, and up to July 31st no salaries at that rate had been paid to any one in that office.

The relators ask a peremptory writ of mandamus to the board of estimate and apportionment to have their salaries fixed in accordance with section 11 of chapter 513 of the Laws of 1909. Relators' counsel contend that, notwithstanding the power of appointment conferred on the county clerk, the Legislature have made it mandatory to retain in office the entire number of clerks and subordinates who were so employed on the 1st day of January, 1909, regardless of the present requirements of the clerk's office for its clerical and office force.

Prior to the passage of this act, the office of the Richmond county clerk was a fee office, as distinguished from a salaried office, so that the only clerks therein who were public employés were the deputy and special deputy county clerks. The other employés were paid by the county clerk out of the fees which he received, and therefore were private employés not within the civil service law. After January 1, 1910, such as should be appointed by the county clerk would become public employés, since provision was made for their appointment in accordance with the civil service law (section 6) and for their salaries to be fixed by the board of estimate and apportionment (section 2). The Legislature empowered the county clerk to choose his subordinates, subject to the civil service law, but that power is unreal and apparent only if by section 11 he must accept all the specified incumbents. Such an interpretation of section 11 would be violative of the Constitution, as [2] the power of appointment involves the exercise of choice in respect to the appointee. People ex rel. Balcom v. Mosher, 163 N. Y. 32, 57 N. E. 88, 79 Am. St. Rep. 552. Furthermore, it would also be violative of section 9 of article 5 of the Constitution, which requires all appointments and promotions, so far as practicable, to be ascertained by competitive examinations.

Considering the two provisions of the act and the purpose of the Legislature to effect economies by changing the office to one with fixed salaries, it cannot be supposed that section 11 has the extreme effect here contended for. A more reasonable interpretation is that the county clerk in exercising the power of appointment so far as the efficient administration of his office permits is to retain those prior incumbents who had worked in the office during the year 1909, and had successfully passed a noncompetitive civil service examination. If the intention of the Legislature went beyond this, and designed to perpetuate the employment of all temporary and accidental clerkships which under the fee system had been engaged in the office during the year 1909, regardless of the permanent needs of the office, such an attempt would be unconstitutional. The act confers upon the county clerk the authority necessary to his office, namely, the right of appointment, and the power of removal, subject to the provisions of the civil service law (section 6). The salaries to be paid to such appointees are to be fixed by the board of estimate and apportionment (section 2). The individuals affected, being but private employés, can enter the office only by appointment or by selection from the civil service eligible lists. The Legislature cannot themselves appoint or designate persons not in public office all of whom shall be so appointed.

The board of estimate and apportionment, under section 226 of the charter (Laws 1901, c. 466), has the power in making up the annual budget of appropriations (which includes allowances made to county officers within the limits of the city) to allow such appropriations as would seem to said board advisable. The opposing affidavits show that, acting in their official capacity, they judged that two clerkships in addition to those already allowed in the budget of 1910 were all that were advisable, and, until those places shall be filled, the court cannot reasonably order the establishment of salaries for any further clerical positions.

[3] The relator Denyse is not within the terms of the statute, for it appears that he did not pass a noncompetitive examination prior to January 1, 1910, but on such examination failed and was re-examined, and finally passed on February 5th thereafter, so that he was not qualified within the terms of the act.

The motions for mandamus are accordingly denied.