**380**

O'REILLY *v.* LEWIS.

---

JOSEPH J. O'REILLY, Plaintiff, *v.* BURDETTE G. LEWIS et al., Defendants.

(Supreme Court, Bronx Special Term for Trials, December, 1918.)

Civil Service Law — what does not infringe the letter of the law — certification of names. for filling a newly created position — statutes — Laws of 1917, chapter 628.

At the time of the enactment of chapter 628 of the Laws of 1917, by which "Riker's Island," theretofore used as a dumping ground, was made the location of a new correctional institution unlike any then existing in the city and called in the statute "The Municipal Farm of The City of New York," the position of warden at Riker's Island was vacant. The name of B, the only keeper under the existing rules with respect to promotion who had served a sufficient length of time to be entitled to take an examination for the position of head keeper or deputy warden, and who at the time was serving as a deputy warden of the Tombs prison, having been alone certified for appointment by the local civil service commission, B, at the suggestion of the commissioner of corrections,

signed a declination of his appointment and said commissioner thereupon made a new requisition for the certification of additional names, explaining at length the nature of the duties of the new position and that a more correct title therefor would be superintendent, the title used in similar institutions in different parts of the country, and calling attention to the fact that the experience and other qualifications required for the examination given to establish an eligible list for superintendents of industries in the city were much greater than those required for warden of a particular institution of the department of correction. The local civil service commission thereupon certified a list of three names taken from the list of those eligible for appointment as superintendent of industries in the department of correction. *Held*, that the appointment of H, who stood second on the list, not only did not infringe the letter of the Civil Service Law but was in a conspicuous degree an observance of the spirit thereof.

Action by the plaintiff as a taxpayer to enjoin the city of New York and the various officials, defendants herein, from drawing warrants for the payment of the salary of the defendant Henry Honick, as warden of Riker's Island in the department of correction of the city of New York, and to restrain the payment of such moneys and also to restrain the municipal civil service commission from certifying the name of said Honick on the payrolls.

Florence J. Sullivan, for plaintiff.

William P. Burr, corporation counsel (Arthur Sweeny, of counsel), for defendant city of New York and defendants city departments.

Gwinn & Pell, for defendant Lewis.

John J. O'Connor, for defendant Honick.

Giegerich, J. This is a taxpayer's action brought to restrain the defendant, the city of New York, and

the various official defendants from paying the salary of the defendant Honick as warden of Riker's Island in the department of correction and to restrain the municipal civil service commission from certifying the name of Honick on the payrolls. The question to be determined is whether the appointment of the defendant Honick to the office named was in violation of the Civil Service Law. The claim is made that one Bremel should have been appointed in place of Honick. The appointment in question was made on or about December 6, 1917. At that time the position known as the wardenship of Riker's Island was vacant, and there was urgent need that it be promptly filled. The enterprise at Riker's Island was a new departure in the city of New York, although similar undertakings had been made in other parts of the country. By chapter 628 of the Laws of 1917 this island, which had been used as a dumping ground, was made the location of a new correctional institution, the name of which designated its general purpose, it being called in the statute " The Municipal Farm of The City of New York." The then commissioner of correction of the city of New York, who, at the time of the trial held the position of commissioner of charities and corrections of the state of New Jersey, made a requisition upon the municipal civil service commission for the certification to him of a list of names of persons eligible for appointment to fill the said office. The list certified contained only the name of the said Bremel, who at the time was serving as a deputy warden of the Tombs prison on Manhattan Island. Although the appointing officer was entitled, under the rules of the municipal civil service commission, to a list of three names from which to make his selection for the appointment, it was impracticable, even if time had permitted, to secure such a list by the usual method of examination for promotion,

because there was only one keeper under the existing rules with respect to promotions who had served a sufficient length of time to be entitled to take an examination for the position of head keeper or deputy warden. Under these circumstances the commissioner of correction summoned Bremel to his office and explained the nature of the duties and the purpose of the new undertaking, stating that the aim was to transfer that island from a rubbish heap into a modern municipal farm, and that the position called for a great deal of managing ability, some knowledge of building, some knowledge of the rudiments of engineering and an ability to assign men to different classes of work on the grounds, including the organization of shops. The commissioner also stated to Bremel that he found upon the examination of Bremel's record that prior to the time he had become a deputy warden, about four years before, his duties had been of a clerical nature; that he had watched his work and believed that in time he would become competent to fill the position of warden of a city prison, but that he did not believe he had the experience or the qualifications fitting him to handle the particular institution, which was one of the three most difficult of the department, and he therefore advised him to decline the appointment, as otherwise he would be compelled to pass his name on the list, which might prejudice him thereafter for promotion to the position of a regular wardenship, for which he was fitted. Bremel signed a declination of the appointment, and thereupon the commissioner made a new requisition for the certification of additional names, explaining at length the nature of the duties and that a more correct title for the position would be superintendent, which was the title used in similar institutions in different parts of the country, and calling attention to the fact that the experience and other

qualifications required for the examination given to establish an eligible list for superintendents of industries in this city were much greater than those required for warden of a particular institution of the department of correction. Thereupon the commission certified as the most nearly appropriate list from which to fill the vacancy, a list of three names taken from the list of those eligible for appointment.as superintendent of industries in the department of correction. Standing second on this list was the defendant Honick, who was thereupon appointed. Without any attempt to discuss at length the provisions of the Civil Service Law, and the decisions thereunder, I think it is enough in this case to say that my opinion is that the appointment of the defendant Honick did not infringe the letter of that law and that it was in a conspicuous degree an observance of the spirit of that law. A new correctional institution had been created by a new statute. This new institution in its essential features was distinctly unlike any existing correctional institution in the city of New York. From the statement of facts set forth above, it is plain that the qualifications requisite for the proper head of this institution were different from the qualifications requisite for the wardenship of any of the existing institutions. Especially during the initial period of its existence, and which would be the period of its development, this new undertaking called for a man of very different training and very different experience and knowledge and abilities from those called for by the regular type of correctional institution. It was probably unfortunate that the term " warden " was selected to designate the head of this new institution, because that word does not adequately describe the office. I am satisfied that the civil service commission and the commissioner of correction, in the course they followed, did

not violate any provision of the Civil Service Law, but, on the contrary, intelligently carried out the true intent of that law, with consequent advantage to the public interest. On behalf of the plaintiff it is argued that the declination made by Bremel at his interview with the commissioner was procured by coercion and duress. If the question of the validity of the so-called declination were material I would have no hesitation in holding that there was no such coercion, but that, on the contrary, the commissioner acted in good faith and for the benefit of the public service and for the benefit of Bremel himself in advising Bremel not to accept an appointment to a position for the distinctive require- ments of which he had not had previous training nor experience, and that it was for his own personal interest to wait until there was a vacancy in a position in an institution similar to the one in which he had had his training and experience. I may add, however, that I do not consider the question of the validity of the so- called declination as having any importance. Bremel would not in any event have been, by virtue of his position as the only one on the list certified as eligi- ble for appointment, thereby entitled to that appoint- ment. Quite aside from the exceptional features of this case above discussed, and even if the position to be filled had been one for which Bremel was qualified, still he would not, as a matter of course, be entitled to the appointment. It has repeatedly been held that the officer having the power of appointment is entitled to the latitude afforded by the certification of three names for exercising his right of selection for appoint- ment. *People ex rel. Balcom* v. *Mosher,* 163 N. Y. 32; *People ex rel. Sweet* v. *Lyman,* 157 id. 368, 379; *Hale* v. *Worstell,* 185 id. 247, 254; *People ex rel. Bald- win* v. *McAdoo,* 110 App. Div. 432; *People ex rel. Fowler* v. *Moskowitz,* 175 id. 710; affd., 220 N. Y. 669.

My conclusion is that there should be judgment dismissing the complaint upon the merits, but as I believe the plaintiff's motive in bringing the action was a good one, and that he thought he was acting in the public interest, the dismissal should be without costs. The requests for findings of the respective parties have been passed upon as indicated on the margins thereof.

Judgment accordingly..