In the Matter of CARL J. SHEDLOCK, Respondent, v WILLIAM G. CONNELIE, as Superintendent of the New York State Police, Appellant.

Third Department, March 1, 1979

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for appellant.

*Harrington & Bookhout (Richard J. Bookhout* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

Petitioner, a police officer for the City of Oneonta Police Department since April, 1974, passed both written and physical tests for appointment to the State Police. He was placed on the eligible list for such appointment established in June, 1976, at number 581. After a background investigation, he was informed by letter dated January 31, 1978 from the State Police that: "[I]t has been determined that you fail to meet all of the eligibility requirements and therefore, no further action can be taken on your application." His number had been reached for a training class commencing February 20, 1978. The petitioner, in oral interviews during the investigation of his background, had been afforded an opportunity to respond to the allegations made against him.

Special Term, on petitioner's application, annulled the disqualification of petitioner on the ground that he was not afforded a due process hearing prior to his disqualification. Appellant superintendent contends on this appeal that he is not required to afford petitioner a due process hearing before disqualifying him as a candidate for lack of fitness or good moral character. We agree. Although appointments to the uniformed force of the State Police are governed by section 6 of article V of the New York State Constitution and by applicable provisions of the Civil Service Law, sole authority for the examination, qualification and appointment of members is vested in the Superintendent of State Police by virtue of the Executive Law and the rules and regulations promulgated thereunder. Subdivision 3 of section 215 of the Executive Law requires that any person appointed as a State trooper be possessed of fitness and good moral character and directs that the Superintendent of State Police make rules and regulations for the examination and qualifications of applicants. Part 475 of title 9 of the Rules and Regulations of the Division of State Police insofar as pertinent reads: "An applicant must * * * be of good moral character * * * and meet such other standards as are set by the superintendent." (9 NYCRR 475.1.) Thus, the superintendent had the power and authority to determine, as a matter of discretion, the "fitness and good moral character" of the petitioner as a qualification of such appointment. The exercise of this discretion, as long as it is rational, is not prohibited by the constitutional provisions

relating to civil service *(Matter of Cassidy v Municipal Civ. Serv. Comm. of City of New Rochelle,* 37 NY2d 526; *Matter of Cacchioli v Hoberman,* 31 NY2d 287, 292; *People ex rel. Balcom v Mosher,* 163 NY 32, 40-41; *People ex rel. Sweet v Lyman,* 157 NY 368, 381-382). We note that it has long been recognized that, due to the nature of the police function in society, higher standards of fitness and character pertain to police officers than to ordinary civil service employees *(Matter of Cacchioli v Hoberman, supra,* p 294, concurring opn by JASEN, J.; *Matter of Vegas v Schechter,* 13 Misc 2d 265, 266-267; see, also, *Foley v Connelie,* 419 F Supp 889, 895-897).

The act of disqualifying one eligible for an appointment like the act of discharging a probationary governmental employee is an administrative function, and no hearing or notice need be given unless specifically enjoined by statute *(Matter of Albury v New York City Civ. Serv. Comm.,* 32 AD2d 895, affd 27 NY2d 694; *Koscherak v Schmeller,* 363 F Supp 932). Significantly, petitioner has pointed to no statute or rule granting him the right to such hearing or notice. In *Board of Regents v Roth* (408 US 564, 577), the Supreme Court defined the property interests protected by the Fourteenth Amendment thusly: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Petitioner is not here deprived of an occupation (police work) by the superintendent's determination, but only of employment with a single employer *(Cafeteria Workers v McElroy,* 367 US 886). *Willner v Committee on Character* (373 US 96) cited by petitioner in his brief on this appeal, therefore, is inapposite. As demonstrated by the institution of this proceeding, petitioner has been afforded the opportunity for judicial review of the determination of the superintendent as to whether it was arbitrary, irrational or capricious. In such circumstances we must conclude that his due process rights have not been violated *(Bishop v Wood,* 426 US 341; *Board of Regents v Roth, supra; Cafeteria Workers v McElroy, supra; Matter of Albury v New York City Civ. Serv. Comm., supra; Koscherak v Schmeller, supra).* Special Term erred in ruling on these facts that petitioner be reinstated to the eligible list unless granted a hearing.

The judgment should be reversed, on the law and the facts, without costs, and the petition dismissed.

MAHONEY, P. J., GREENBLOTT, SWEENEY and STALEY, JR., JJ., concur; MIKOLL, J., not taking part.

Judgment reversed, on the law and the facts, without costs, and petition dismissed.