■ In the Matter of EDWARD ARANA, Appellant, v THOMAS A. CONSTANTINE, as Superintendent of the New York State Police, et al., Respondents.—Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Travers, J.), entered September 16, 1991 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* review a determination of respondents denying petitioner's request for reinstatement as a railroad police officer.

When a urine sample submitted by petitioner as part of a return-to-duty physical examination tested positive for cocaine metabolite, petitioner was suspended from service as a railroad police officer by his employer, Metro-North Commuter Railroad Company (hereinafter Metro-North), pending a hearing. After the hearing, petitioner was found guilty of using a controlled substance—an offense warranting discharge or suspension—and was dismissed from his position. Shortly thereafter, his police commission was revoked by respondent Superintendent of the State Police.

Petitioner's initial appeal, taken pursuant to the disciplinary appeal procedure set out in the collective bargaining agreement entered into between Metro-North and its police officers, was denied by the Director of Labor Relations of Metro-North. As provided by the bargaining agreement, a final appeal was then heard by a Special Board of Adjustment

of the National Mediation Board. Concluding that the chain of custody of the sample had not been adequately proven, the Special Board of Adjustment, by a 2 to 1 vote, decreed that petitioner was to be reinstated, with back pay and restoration of benefits, provided a retest of his urine yielded a negative result. Pending reinstatement of his commission, petitioner returned to work in an administrative capacity. However, based on his own investigation, the Superintendent found that petitioner was not of good moral character and declined to reinstate his commission as a police officer. Being unqualified to serve as a police officer, petitioner, in accordance with the collective bargaining agreement, was thereupon terminated. This CPLR article 78 proceeding by petitioner to review and annul the Superintendent's allegedly improper denial of his application for a commission followed. Supreme Court dismissed the petition and denied the relief requested by petitioner, finding that the Superintendent's determination was adequately supported by the record. Petitioner appeals.

Railroad Law § 88 (5) provides that the railroad corporation applying to have a person appointed as a railroad police officer is to conduct an investigation of the applicant and that the Superintendent is to review a report of that investigation and determine whether the applicant is of "good moral character" before granting the appointment. The investigation, which is to be "conducted in a manner satisfactory to the superintendent" (Railroad Law § 88 [5]), is separate and distinct from any hearing or other process mandated by the collective bargaining agreement for the settlement of grievances. For this reason, petitioner is incorrect in his assertion that the Superintendent was precluded from considering a letter from Metro-North's chief of police detailing the chain of custody of petitioner's urine sample. Although the documents and other evidence on which the Superintendent's determination is based must at least be made available after the fact so that an applicant may intelligently challenge the Superintendent's decision (*Matter of Mooney v Superintendent of N. Y. State Police,* 117 AD2d 445, 448), a disqualified applicant has no right to a hearing respecting that decision. Given the nature of the police function, the Superintendent's discretion to accept or reject applicants is necessarily broad, and judicial review of such decisions for arbitrariness, irrationality or capriciousness is sufficient to detect abuse of that discretion (*cf., Matter of Shedlock v Connelie,* 66 AD2d 433, 435, *affd* 48 NY2d 943).

The Superintendent's decision that petitioner's test results reflected petitioner's use of cocaine prior to submission of the urine sample has ample support in the record. Letters from the chief of police established the chain of custody of the sample and the qualifications of the laboratory workers who performed the tests—five methods of testing all indicated the presence of cocaine in the sample. A forensic scientist's report established that the prescription and over-the-counter drugs taken by petitioner would not produce a false-positive result for cocaine metabolite. Finally, petitioner's sample also tested positive for opiates, as would be expected in view of the fact that he was taking codeine prescribed for his painful ankle injury; this provides further confirmation that the sample was, in fact, taken from petitioner. In sum, the decision to deny petitioner's application represents a prudent exercise of the Superintendent's broad discretionary power in this area (see, *Matter of Mallia v Connelie*, 76 AD2d 1030, 1031, *appeal dismissed* 53 NY2d 939; *cf.*, *Matter of Willis v Meehan*, 131 AD2d 683).

This Court does not have jurisdiction to entertain petitioner's argument that the "penalty" imposed for his failure to obtain a police commission, namely dismissal, was excessive. In view of the fact that the collective bargaining agreement, negotiated pursuant to the Federal Railway Labor Act (45 USC § 151 *et seq.*), ostensibly provides for dismissal under these circumstances, any grievance with regard to the interpretation of that agreement must be settled by the arbitration procedures set forth in the Railway Labor Act (*see*, 45 USC § 153 [First] [i]; *Slocum v Delaware, Lackawanna & W. R. R. Co.*, 339 US 239, 244; *see also*, *Consolidated Rail Corp. v Railway Labor Executives' Assn.*, 491 US 299, 304).

Weiss, P. J., Mercure, Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.