VILLAGE OF MILL NECK, Appellant, *v.* TOWN OF OYSTER BAY et al., Respondents.

(Argued December 12, 1932; decided March 7, 1933.)

*David C. Bennett* and *William T. McCoun* for appellant. The statute provides for an actual division and distribution of the property of the water district. (Village Law, § 35; *Rosin* v. *Ledgerwood Mfg. Co.*, 89 App. Div. 245.) The provisions of the statute requiring an actual division and distribution of the water district's property are appropriate to the situation and no hardship or difficulty is involved in their application. (County Law, § 5; Town Law, §§ 30–34; Village Law, §§ 34, 35; *Wynehamer* v. *People*, 13 N. Y. 378; *Matter of Water Tax, Town of Niskayana*, 235 App. Div. 566.) The Legislature has power to divide a municipal corporation and apportion its assets among its subdivisions. (*Adriaansen* v. *Board of Education*, 248 N. Y. 542; *People ex rel. Coney Island Jockey Club* v. *Purdy*, 207 N. Y. 695; *Brooklyn Park Commrs.* v. *Armstrong*, 45 N. Y. 234; *Darlington* v. *New York*, 31 N. Y. 164; *People* v. *Kerr*, 27 N. Y. 188; *Kahrs* v. *City of New York*, 98 App. Div. 233; *Koelesch* v. *New York*, 34 App. Div. 98; *Worth* v. *Brooklyn*, 34 App. Div. 223.)

*Le Roy B. Iserman, Paul Bonynge* and *Daniel A. Dorsey* for Thomas C. Wade et al., as Commissioners of Locust Valley Water District et al., respondents. The plaintiff

village is not in any way prejudiced by the continued existence of the water district. (*Skaneateles Water Works Co.* v. *Village of Skaneateles*, 161 N. Y. 154; *Colby University* v. *Village of Canandaigua*, 96 Fed. Rep. 449; *Matter of Beauty Spring Water Co.*, 134 App. Div. 17; 198 N. Y. 413.)

*Charles I. Wood* for Town of Oyster Bay, respondent.

O'BRIEN, J. The Locust Valley water district in the town of Oyster Bay was created pursuant to section 285 of the Town Law (Cons. Laws, ch. 62) on March 7, 1922. The village of Mill Neck became an incorporated village in that town February 28, 1925. The village of Matinecock in the same town became an incorporated village April 2, 1928, and the village of Lattingtown October 2, 1931. The water district includes territory which is now embraced within these villages.

This action, commenced October 16, 1927, was brought by the village of Mill Neck against the town and its town board and board of assessors, the commissioners of the water district and several individuals, officials and other municipal corporations. By order of the Supreme Court dated March 12, 1929, a supplemental and amended complaint made the village of Matinecock a party defendant. This amended complaint demands that the commissioners of the water district render an account apportioning and allocating to the villages of Mill Neck and Matinecock the parts of the unpaid obligations incurred in behalf of the water district prior to February 28, 1925, as well as the proportionate share of bonded indebtedness which was incurred in behalf of the water district prior to the action and which the villages must assume. It also demands a partition and division of the real and personal property vested in the commissioners of the water district or a sale thereof and a division of the proceeds. The answer of the village of Matinecock makes substantially the same demands in its own behalf as of the date of

April 2, 1928. These demands are based upon the provisions of sections 34 and 35 of the Village Law (Cons. Laws, ch. 64), as added by Laws of 1922, chapter 395, and by Laws of 1925, chapter 116.

The standpipe or storage tank of the Locust Valley water works system is located wholly within the boundaries of the village of Matinecock but the distribution mains penetrate all parts of the district. Wells, pumps and other accessories are also scattered throughout the district. Necessarily the finding of fact is that the system is single and entire and not susceptible of partition or division without destruction. The judgment entered upon the decision of the referee decreed among other things that the village of Mill Neck is entitled to an undivided and indivisible interest equal to 13.614 per cent in the assets of the district as of February 28, 1925, and apportioned such interest to this village. It likewise adjudged that the village of Matinecock is entitled to 23.411 per cent as of April 2, 1928, and made such an apportionment. The Appellate Division struck out these provisions and also the respective supporting conclusions of law in the decision but it affirmed that part of the judgment which dismissed so much of the cause of action as demands the partition and sale of any part of the property and an accounting.

Appellant concedes that the difficulties relating to an actual division of tangible property are great and possibly insurmountable. To conclude, therefore, that the Legislature intended to thrust upon the courts the duty of encountering a task so nearly impossible of fulfillment is scarcely conceivable. Whatever the statute may mean, we cannot think that its language leads to any such result. That it means more than the interpretation given it by the Appellate Division seems probable. According to that interpretation, the villages are entitled to no interest, not even an undivided and indivisible share in the property of the district. The statute (L. 1925, ch.

116) by which section 35 was added to the Village Law is entitled an act " in relation to the apportionment of property and obligations " of a special district, and the caption of this section bears the same import. In the body of the law reference is made not only to the proportion of the bonded debt incurred by the town but the act also provides that " the apportionment of personal and real property belonging to the special district shall be determined according to the relative assessed valuation of the personal and real property in that portion of the special district without the village and that portion within the village." The statute certainly directs more than an apportionment of liability on the bonded indebtedness and current obligations. It commands some kind of an adjustment between the district and the villages in relation to the distribution system. This part of the statute cannot be ignored or bluntly discarded as meaningless. It must be deemed to represent some purpose. Our vision is no clearer than that of the learned referee and the purpose which he believes that he detected seems to us more nearly reasonable than any other which our ingenuity can discover. If the true purpose lies hidden, it must be clarified by additional legislative illumination.

The judgment of the Appellate Division should be reversed and that of the referee affirmed, with costs in this court and in the Appellate Division.

CRANE, J. (dissenting). I do not interpret sections 34 and 35 of the Village Law as requiring an apportionment of the property or the assets constituting a water district, or as giving to the village any property interest in the assets of the water district. The physical impossibility of making such a division is apparent. How can the pipes of a sewer district be divided into different ownership, or the equipment and property of a water district, with the pumping station and standpipe in one village, and the outlets and laterals in another village? Or, again, how can the property of a park district or a

police district be divided up? Very clear, specific and positive directions must be given by the Legislature to evidence such an intention.

The Legislature has failed to state two things. Nowhere in section 34 or in 35 do we find it stated that the village shall not be liable for *future* indebtedness. Secondly, there is nothing to direct or command the apportionment or division of the district assets upon the creation of the village. The words used might possibly be given this mplication; there is no positive or direct statement to this effect. Surely we should not indulge in implications to arrive at such an absurd result. To me, personally, they do not even imply such a result, although I recognize that the language is not precise.

These districts have been created for sewer, water, light, fire, park, health and police purposes. Indebtedness has been incurred by the issuing of bonds for the purpose of creating, in these instances before us, parks and a water system. Recognizing that after the creation of such districts, possibly functioning as quasi-municipal corporations, villages might be created out of the territory, sections 34 and 35 were adopted solely for the purpose of apportioning the expense of the entire district between the village thus created and the remainder of the district. It was never intended to break up the district as a district, or to apportion the property or the assets, or break up a system. To do so, physically, has been recognized by all as impossible. To do so, by mere passing of title, or giving share interest in the pipes, etc., is an implication of the referee unjustified by the statutes.

What do sections 34 and 35 say? Section 34 provides that where a village has been created out of the district it " shall not be relieved from bearing its proportionate share of any liability or indebtedness incurred for such special district." Note that this is all that the section provides. The village shall pay its proportionate share of the indebtedness. Nothing is said about future

indebtedness, or relieving it of future indebtedness, or that it shall not be liable for future indebtedness. This may be implied, but it is not stated. Section 34 merely says that the village shall be liable for its proportionate part of the indebtedness already incurred. Note also that it does not say what the proportionate part shall be. This is all provided in section 35. There it is stated that the proportion of the bonded debt which shall be assumed by the village, and the apportionment thereof, shall be determined according to the relative assessed valuation of the personal and real property in that portion of the special district without the village and that portion within the village. This is simple, and the apportionment is to be made, in the first instance, by agreement, and, in case of failure to agree, then by the court. The village is to be taxed in accordance with the proportion of the assessed valuation of personal and real property in the village to that in the remainder of the district. How the village shall collect this tax is left to the village authorities, but this proportion of the bonded indebtedness is to be assessed upon the village by the town. Nowhere in this section 35 do we find any provision saying that the property of the various districts, water district, or sewer district, or park district shall be split up and divided between the village and the district. No such division is stated or suggested. The only thing in mind was the apportionment of the bonded indebtedness, and this was to be determined according to the apportionment of the personal and real property between the village and district. The words, "apportionment of personal and real property belonging to the special district," refer to the personal and real property *in* the special district. The mistake in this section, if there be one, is in using the words, "belonging to." "Belonging" has many meanings. One is, "to be the property of somebody," and the other is, "to be connected with, or to be a part of." In this

latter sense section 35 reads: " The proportion of the bonded debt incurred by the town and payable by a tax against the property *within a special district* * * * shall be assumed by the village and the apportionment of the personal and real property belonging to the special district [which means the property *within the* special district, just referred to] shall be determined according to the relative assessed valuation." " Property within a special district " means the same thing here as " property belonging to the special district." To my mind such language would never have been used had the Legislature intended to refer to water plants and pipes, sewer pipes, or disposal plants, police station houses, park grounds, or recreation centers, and the like.

At least the courts are not justified in doing such a drastic thing as dividing up the property of a district in the absence of direct and positive orders to do so by the Legislature. We find no such division directed by this section. The Legislature has not said that this class of property shall be divided between the village and the district. Until we have a clear expression of an intention leading to such an impractical result, we should go no further than to hold that these sections, 34 and 35, provide merely for the apportionment of a bonded indebtedness, according to the relative proportion of the real and personal property in the village and in the district without the village. If the Legislature intends any more than this, it can state it in language about which there will be no misunderstanding.

For these reasons I am for affirmance.

POUND, Ch. J., KELLOGG, HUBBS and CROUCH, JJ., concur with O'BRIEN, J.; CRANE, J., dissents in opinion in which LEHMAN, J., concurs.

Judgment accordingly. (See 261 N. Y. 696.)