VILLAGE OF KENSINGTON, Appellant, *v.* TOWN OF NORTH HEMPSTEAD et al., Respondents.

(Argued December 12, 1932; decided March 7, 1933.)

*George R. Brennan* and *August C. Flamman* for appellant. The constitutional rights of the plaintiff are involved. (*People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People ex rel. Townsend* v. *Porter*, 90 N. Y. 68; *People ex rel. Yost* v. *Becker*, 203 N. Y. 201; *People* v. *Pelham*, 215 N. Y. 374.) Upon incorporation of the plaintiff it ceased to be a part of the Great Neck Park district. (*Suburban Electric Light Co.* v. *Town of Hempstead*, 38 App. Div. 355; *Villa Park Assn. of Great Neck* v. *Town of North Hempstead*, 162 App. Div. 45; *Matter of Davies* v. *Cheshire*, 225 App. Div. 822; *Village of Mill Neck* v. *Town of Oyster Bay*, 140 Misc. Rep. 164.)

*Alfred T. Davison, Addison B. Scoville* and *Orrin G. Judd* for Board of Park Commissioners of Great Neck Park District, respondent. No constitutional question is involved. (*City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Matter of Eiss* v. *Summers*, 205 App. Div. 691;

*Matter of Bronx Parkway Commission* v. *Hylan*, 119 Misc. Rep. 785; 206 App. Div. 688; 236 N. Y. 593; *People ex rel. Wood* v. *Draper*, 15 N. Y. 532; *Astor* v. *Mayor*, 62 N. Y. 567; *Matter of Watson*, 226 N. Y. 384; *Matter of Mayor of New York*, 99 N. Y. 570; *Mead* v. *Turner*, 134 App. Div. 691; *People ex rel. Farley* v. *Winkler*, 203 N. Y. 445; *People ex rel. Metropolitan Street Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *People* v. *Paris*, 181 App. Div. 499.) Sections 34 and 35 of the Village Law do not apply to the plaintiff, even if they could be construed to have a retroactive effect. (*Jessup* v. *Carnegie*, 80 N. Y. 441; *Woollcott* v. *Shubert*, 169 App. Div. 194.)

*G. Burchard Smith* and *Le Roy G. Edwards* for Town of North Hempstead et al., respondents. No constitutional right of the plaintiff is violated. (*People ex rel. Metropolitan Street Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *People* v. *Shepard*, 36 N. Y. 285; *Matter of Mayor of New York*, 99 N. Y. 570; *Bronx Parkway Commission* v. *Hylan*, 119 Misc. Rep. 785; 206 App. Div. 688; 236 N. Y. 593; *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475.) Sections 34 and 35 of the Village Law are not retroactive. (*Village of Mill Neck* v. *Town of Oyster Bay*, 140 Misc. Rep. 164.)

*H. Stewart McKnight* for Board of Supervisors of Nassau County, respondent.

KELLOGG, J. The town board of the town of North Hempstead, following the method prescribed by article 17-B of the Town Law (Cons. Laws, ch. 62), newly added thereto by chapter 54 of the Laws of 1916, on the 14th day of August, 1916, established within the town a park district designated " Great Neck Park District of the Town of North Hempstead." More than five years later, on November 7, 1921, there was incorporated as a village the plaintiff, the village of Kensington. All the territory comprised within the new village was formerly within the bounds of Great Neck park district. Between the establishment of the park district and the incorporation

of the village, the town board of the town of North Hempstead, pursuant to the provisions of article 17-B of the Town Law, issued its bonds, for and on behalf of the Great Neck park district, in the principal amount of $89,000. Subsequently to the incorporation of the village there have been similarly issued, for and on behalf of the park district, bonds in the principal sum of $286,000. These bonds constituted a charge upon the town, but were to "be collected from the property within the park district." (Town Law, § 349-f.) On the 31st of January, 1931, the board of trustees of the plaintiff village passed a resolution, declaring its election no longer to pay charges for the maintenance of the park district, except its proportionate share of charges in connection with the bonded indebtedness of the park district incurred before the plaintiff's incorporation. The plaintiff thereafter brought this action to restrain the officers of the town, the supervisors of the county, and the commissioners of the park district, from assessing, levying or collecting any tax upon properties within the plaintiff village, on behalf of or for the Great Neck park district, except to cover the proportionate liability of such properties, on account of the bonded indebtedness of the park district incurred prior to the incorporation of the plaintiff. The complaint in the action, which sets up the facts recited, has been dismissed on the ground that it fails to state a cause of action.

The plaintiff asserts that upon its incorporation, the territory, comprised within its boundaries, ceased to be a constituent part of the park district; that any other conclusion would offend article X, section 2, of the State Constitution, which provides that all municipal officers whose election or appointment is not provided for by the Constitution "Shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose." Briefly, the con-

tention of the plaintiff, as stated by its counsel, is this: " Appellant contends that there cannot be at the same time within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges."

The provisions of article 17-B permit the town board of any town, upon the petition of owners of real estate in a certain district, representing more than one-half the assessed value thereof, to " create and establish a park district outside an incorporated village, city, or other park district." (Town Law, § 349.) The town board shall appoint three persons as park commissioners who shall be owners of real estate within the district. (§ 349-a.) The commissioners shall constitute a body corporate, and shall have the powers of a municipal corporation. All real estate acquired shall be taken in their name and title thereto shall vest in them in their corporate capacity. (§ 349-c.) " The board of park commissioners shall proceed to acquire the property described in the petition for the establishment of such park district and may improve the same and erect or cause to be erected thereon such noncommercial buildings and structures as may be proper for the use thereof as a park." (§ 349-d.) " The board of park commissioners shall have entire charge, control, and management of the establishment, maintenance, operation and improvement of such park." (§ 349-g.) " The board of park commissioners shall have power to establish and enforce general rules and regulations for the government and protection of the park and of all property in charge of such board or under its control." (§ 349-l.) " The free use of such park may be limited by the board of park commissioners in its discretion to the inhabitants of such park district." (§ 349-k.)

It is difficult to see wherein a violation of article X, section 2, of the Constitution may be found, if the real estate, now within the corporate limits of the plaintiff village, remains, as formerly, a constituent part of the

park district. It has been said that the purpose animating the adoption of the constitutional provision referred to was " to preserve to localities the control of the official functions of which they were then possessed;" per GROVER, J., in *People* v. *Raymond* (37 N. Y. 428, 431); " to secure to the people of the cities, towns or villages of the State the right to have their local offices administered by officers selected by themselves;" per ANDREWS, J., in *People ex rel. Williamson* v. *McKinney* (52 N. Y. 374, 378); " to protect and give force and effect to the principle of local self-government;" per O'BRIEN, J., in *Rathbone* v. *Wirth* (150 N. Y. 459, 487). In *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50, 56) Judge ALLEN said for the court: " The theory of the Constitution is, that the several counties, cities, towns and villages are, of right, entitled to choose whom they will have to rule over them." The commissioners of the park district in question were appointed by the town board of the town of North Hempstead out of which the park district was created. They became officers of an agency of the town, for a particular town purpose, through appointment by " such authorities thereof, as the Legislature " had designated " for that purpose." They were vested with authority, not to control and manage the park district, but the park land which they might acquire within the limits of the area described as constituting the district. According to the allegations of the complaint itself, the commissioners never acquired park lands within the area now constituting the territory of the plaintiff village. It will thus be seen that the commissioners are officers of a town agency; that they were appointed by town authorities; that they have " charge, control, and management " of park lands purchased for town purposes. Here is no violation of " the principle of local self-government," of the constitutional mandate that municipalities shall have " their local offices administered by officers selected by themselves," of the theory that the several munici-

palities " are, of right, entitled to choose whom they will have to rule over them." Even if the commissioners had acquired title to park lands which now are within the village limits, that fact would not alter the situation. Even then the commissioners would act merely as officers of a town agency in the management of town property within the village limits; they would in no manner perform the functions of village officers; they would in no way govern the people of the village or control their finances or properties.

In *Matter of City of New York* (99 N. Y. 569, 583, 584) there will be found a case which is quite definitely in point. An act of the Legislature (L. 1884, ch. 522) was there under review which empowered the city of New York to acquire title to lands within the city limits, as well as lands within the county of Westchester adjoining, for park purposes, and bestowed upon the department of public works of New York city jurisdiction and control over these lands when acquired, for the purpose of maintaining them as public parks. It was held that the act did not violate article X, section 2. There the court said that the " park police do not become Westchester county officers;" that " no official of that county is legislated out of office;" that " no officers are removed or superseded or interfered with, and the local government of Westchester is not abridged." The court could see " that questions may arise as between the park police and the county authorities, and there may be a collision as to the rights of each, but that will not raise the constitutional question presented." It then made the statement: " The park police will be and remain New York officers, and if there is no power to grant them authority within the lines of the city's property, at least that provision may give way to the right and duty of Westchester to preserve the peace and protect life and property within the county limits without any harm to the general scheme and scope of the law authorizing the

new parks." Thus, the city of New York might own and control lands in the adjoining county of Westchester, maintain and manage them as public parks, without subjecting itself to a charge of displacing local county officers, or of interfering with local self-government, in violation of article X, section 2. So here, the commissioners of Great Neck park district, acting for the town of North Hempstead, might acquire and govern park lands in the plaintiff village, without displacing local self-government or violating the constitutional provision.

There was nothing in article 17-B, as it read when the plaintiff village was incorporated, which expressly or by implication provided that upon the erection of a village within the park area, the territory so taken over by the village should cease to constitute a part of the park district. It is true that the area originally to be established as a park district must be real property " outside an incorporated village, city, or other park district." (Town Law, § 349.) However, the commissioners might acquire for a park real estate within an incorporated village or city, provided the legislative body of such municipality gave its consent thereto. (Town Law, § 349-d.) Evidently the thought that the commissioners of a park district might acquire lands within a village, to be administered by them as a public park, was not repugnant to the Legislature.

The judgment should be affirmed with costs.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment affirmed.