Thomas P. Farley, J.
In this action for a declaratory judgment, the plaintiff Village of Atlantic Beach seeks to establish in itself sole and exclusive power and jurisdiction to provide for the collection and removal of garbage and refuse within its territorial limits. A permanent injunction is also sought (1) to restrain the defendant sanitary district from providing these services, (2) from levying taxes against the real property in the village for such service, and (3) to enjoin defendant from entering into a garbage removal contract effective after December 31, 1965. Briefly stated, the action is brought to resolve a dispute between the village and the sanitary district as to the jurisdiction over garbage removal within the corporate limits • of the village.
The trial consisted of a submission of the pleadings and the-offer and receipt of four exhibits into evidence. In effect, the parties stipulated as to the following basic facts, but disagreed as to tb ' conclusions to be drawn therefrom.
*195 On June 21, 1962, the plaintiff village was organized under article 2 (now art. 3) of the Village Law, the lands within its corporate limits being part of the unincorporated Town of Hempstead. At that time, the defendant sanitary district had been in existence, having been created by resolution of the Town Board of the Town of Hempstead on June 9,1931. The sanitary district embraces all of the land within the territorial limits of the village, together with other land outside of the village limits. Since its creation and until the present time, the defendant sanitary district has contracted with third parties for garbage collection and removal services. It does not own any property nor does it remove and dispose of garbage through any of its employees. The existing contract for this service was executed in 1962 and will expire on December 31,1965. The cost of operation of the sanitary district is levied against the land within the entire district and is included in the annual Town of Hempstead tax.
On July 22, 1965, the plaintiff village advised the sanitary district in writing that the village would provide garbage removal service for property within its territorial limits after the expiration of the present contract, December 31,1965, unless the village and the sanitary district arrived at some satisfactory arrangement. No agreement between the parties was ever reached and the village resolved to provide its own removal service and “ that the Village Attorney be directed to institute an action against the Sanitary District to restrain the District from entering into a contract covering the Village and performing such services in the Village after 1965 ”.
Notwithstanding notice of the above, the sanitary district advertised for bids for garbage removal for the entire district including the Village of Atlantic Beach, for 1966 and, by a resolution adopted at a meeting held on September 13, 1965, authorized the execution of a contract for a three-year period commencing January 1, 1966, for the sum of $144,000. As with previous contracts, part of this cost is intended to be levied against the real property in the village.
It is the village’s position that under sections 34 and 35 of the Village Law, the real property within its corporate limits ceased to be part of the sanitary district upon the village’s incorporation on June 21, 1962; that the defendants have no right to continue to contract for garbage removal after January 1, 1966, or to cause taxes to be levied for that purpose. The defendant, on the other hand, claims these rights; denies the district was reduced after incorporation; and urges that the plaintiff is not the real party in interest.
*196 When the plaintiff was incorporated as a village in 1962, sections 34 and 35 of the Village Law were in effect. These sections, however, were repealed and sections 3-358 and 3-360 were enacted containing the same language as the old sections 34 and 35. In relation to the incorporation of villages, section 3-358 (formerly § 34), which is entitled “Liability to special districts and collection of taxes ’ ’, provides in part as follows: 1 ‘ If the territory so incorporated as a village includes within its boundaries part of a special district established by the town for a sewer, water, light, fire, park, health, police or any other special district for municipal purposes the territory so included within the boundaries of the village shall not be relieved from bearing its proportionate share of any liability or indebtedness incurred for such special district purposes while such territory was a part of such special district ”.
Section 3-360 (formerly § 35), which is entitled “ Apportionment of property and obligations of a special district of a town upon the incorporation of a part in a village ” provides in part as follows: “If the territory so incorporated as a village includes within its boundaries part of a special district established by the town for a sewer, water, light, fire, park, health, police or any other special district for municipal purposes, the proportion of the bonded debt incurred by the town and payable by a tax against the property within a special district, for whose benefit the bonds were issued which shall be assumed by the village and the apportionment of personal and real property belonging to the special district shall be determined according to the relative assessed valuation of the personal and real property in that portion of the special district without the village and that portion within the village ’ ’.
It is the plaintiff’s contention that these statutes implicitly preclude the sanitary district from exercising any jurisdiction or rights within the territorial limits of the village and from binding the village by any contract for garbage removal after January 1, 1966.
In Village of Mill Neck v. Town of Oyster Bay (261 N. Y. 252), a question was presented as to whether there should be a partition and division of water district assets between the district and certain villages after the villages were incorporated. Pumping stations, pipes, distributing mains, had been constructed and the system had served the areas which later constituted these villages. The judgment of the lower court, entered on a Referee’s report, denied partition but, construing sections 34 and 35 of the Village Law, decreed that the villages involved were each entitled to a percentage interest in the prop *197 erty of the district. The Appellate Division affirmed that part of the judgment which denied the partition, but reversed as to the allocation of percentage interest. The Court of Appeals reversed the Appellate Division, stating as follows (pp. 255-256): ‘ ‘ Appellant concedes that the difficulties relating to an actual division of tangible property are great and possibly insurmountable. To conclude, therefore, that the Legislature intended to thrust upon the courts the duty of encountering a task so nearly impossible of fulfillment is scarcely conceivable. Whatever the statute may mean, we cannot think that its language leads to any such result. That it means more than the interpretation given it by the Appellate Division seems probable. According to that interpretation, the villages are entitled to no interest, not even an undivided and indivisible share in the property of the district. The statute (L. 1925, ch. 116) by which section 35 was added to the Village Law is entitled an act ‘ in relation to the apportionment of property and obligations ’ of a special district, and the caption of this section bears the same import. In the body of the law reference is made not only to the proportion of the bonded debt incurred by the town but the act also provides that 1 the apportionment of personal and real property belonging to the special district shall be determined according to the relative assessed valuation of the personal and real property in that portion of the special district without the village and that portion within the village.’ The statute certainly directs more than an apportionment of liability on the bonded indebtedness and current obligations. It commands some kind of an adjustment between the district and the villages in relation to the distribution system. This part of the statute cannot be ignored or bluntly discarded as meaningless. It must be deemed to represent some purpose. Our vision is no clearer than that of the learned referee, and the purpose which he believes that he detected seems to us more nearly reasonable than any other which our ingenuity can discover. ’ ’
In Matter of Rinas v. Duryea (278 App. Div. 419, affd. without opn. 304 N. Y. 586), a question of jurisdiction between a water district and a village to provide water service was involved. The pre-existing water district had installed its pipes and equipment and serviced a developed portion of a later created village. A large part of the village, however, was undeveloped and no water service was rendered to this area nor had any equipment been installed therein. After incorporation, the village sought to provide water only to the undeveloped section through a contract with a municipality outside the water dis *198 trict. The water district opposed this, claiming sole jurisdiction to furnish this service. There, the Appellate Division, overruling the district’s contention, said (pp. 420, 421): “We cannot agree with this contention. The obvious statutory plan as created by the Legislature was that special districts, such as water districts, should render services to areas outside of incorporated villages (Town Law, § 190), and that the villages should render such services within their territorial limits. (Village Law, § 89.) We find no statutory authority granting a district any permanent vested right to serve its territory, nor on the other hand, do we find provision whereby a village is restricted in the extent to which it may render such services to its inhabitants. Where, as here, a village is carved out of territory embraced within a special district, it in effect ceases to be a part of such district, except as to rights and liabilities already created. (Village Law, Sec. 34; Village of Mill Neck v. Town of Oyster Bay, 261 N. Y. 252.)”
In addition, the court also held: “ Although the water district may continue to function within that portion of the village which it was servicing prior to incorporation, it has no vested right to furnish water to other areas within the corporate limits previously undeveloped and unserved. As to those areas the village has full authority to contract for water where it sees fit, subject only to the approval of the Water Power and Control .Commission.”
Both plaintiff and defendant here argued that the Rinas case support their respective positions. The defendant contends that by the permission given to the water district to continue its service in the village, the court did not diminish the area of the district and consequently retained its jurisdiction. The village, on the other hand, urges that a recognition of its jurisdiction clearly appears as does its separation from the district. In the opinion of this court, the permission to continue within the corporate limits granted in the Rinas case is merely a recognition of rights created by the presence and prior functioning of fixed, installed assets, incapable of division, which had serviced the area before incorporation. There is no recognition of any “ permanent vested rights ”, in the district, nor of any jurisdiction or rights over an area where physical facilities had not been installed. On the contrary, the tenor of the entire decision indicates a separation of the district from the village, for the court said (p. 420): “ Where, as here, a village is carved out of territory embraced within a special district, it in effect ceases to be a part of such district ”, after having previously *199 pointed out that there is no statutory restriction on a village to render the services involved.
While the conclusions reached in the above cases may not be determinative of the issue presented here, the quoted language indicates the statutory intent of sections 34 and 35 to be that a newly created village ceases to be part of a prior existing service district created by the town. Certain rights and liabilities of the district existing at the time of incorporation were, and must be, recognized. This is understandable in the light of the types of service and installation which were involved.
In the instant case, however, we do not have the problems of a division of physical assets which faced the courts in the Mill Neck and the Rinas cases. Here, the sanitary district had no tangible property or fixed assets which would be affected in any way. At the time of the village’s incorporation, the district only had the obligation imposed by a third-party garbage removal contract expiring on December 31, 1965, which, under sections 34 and 35 of the Village Law, became an obligation of the village. This merely constituted such an 11 already created ’ ’ liability as was referred to in the Rinas case which survived incorporation.
In searching for legislative intent, we find that subdivision 25 of section 89 of the Village Law empowers villages to render garbage disposal service within its territorial limits and to contract for such service. In part, this section provides as follows: “ Disposition of garbage and ashes, (a) May provide for the removal from the buildings in said village and for the disposition of swill, garbage, ashes and rubbish of said buildings, or for the removal and disposition of the swill and garbage alone, or the ashes alone, either directly through the employees of said village or by contracting with another person, other persons, a corporation or with a town, city or village. Such contract may be made for one or more years.”
From this it would appear that the Legislature intended a village, upon incorporation, to have the final say with respect to garbage removal service within its territorial limits. That this is so and a diminishment of the district area is intended, is further evidenced by section 3-356 (subd. 2) of the Village Law which, among other things, provides that town improvement districts “ shall cease to exist at the end of the fiscal year of such district next following the first day of June following the first day of January next succeeding the date of incorporation” (italics added) where the improvement district is coterminous with the limits of or wholly included within the *200 village boundaries. The use of the phrase “ shall cease to exist” could not be any more definitive to express, not only finality of jurisdiction of a special district, but also a separation from the village.
Section 3-356, dealing with districts wholly included in village boundaries, is followed by sections 3-358 and 3-360, both of which begin: ‘ ‘ If the territory so incorporated as a village includes within its boundaries part of a special district established by the town”. These sections refer to proportionate obligation, apportionment of personal and real property, discharge of liability, apportionment of taxes and adjustments all after incorporation. In this there is an inherent recognition by the Legislature of a termination of a district’s jurisdiction within the village limits and an awareness that a final disposition and adjustment of assets and liabilities must eventually be made.
Further indication that such was the intent of the Legislature is also found in section 3-354, wherein certain services are directed to be continued and the following is found (subd. 1, par. b): “ b. Any town improvement district and any fire district, fire protection district or fire alarm district partially located in a newly incorporated village and which upon the incorporation of such area would by operation of law or could thereafter pursuant to law, cease to exist in such village shall, nevertheless, from the date of such incorporation until the first day of June following the first day of January next succeeding such date of incorporation, continue to perform and to render to and in such incorporated area all those functions and services rendered by it therein and therefore on the date of the filing of the petition for incorporation.” (Italics added.)
In the light of the basic philosophy upon which villages are formed to provide “home rule” and for the needs of those within their territorial limits, it is difficult to see how much more emphatically the Legislature could have framed its language to demonstrate its intention that a village, once created, should have complete jurisdiction over such services as are here involved and would be separate and apart from the district.
In Village of Kensington v. Town of North Hempstead (261 N. Y. 260), referred to by the defendant, an action was brought to restrain town officials from levying or collecting taxes for a park district which encompassed the village prior to its incorporation. A dismissal of the complaint in that case was unanimously affirmed. There, however, the village was formed prior to enactment of sections 34 and 35 of the Village Law and the applicability of those sections was not discussed. The court only held that these sections were not retroactive. The principal *201 question considered was whether it was constitutional to permit a district to function in a village. This question was resolved in the affirmative.
While the conclusion reached in this case and some of the language employed gave this court some reason to pause, I do not feel in the light of the conclusions reached in the Mill Neck case (supra), which was decided on the same day the Kensington case was decided by the Court of Appeals, that there is any conflict between the two decisions nor with the conclusion I am reaching here. In the Mill Neck case the court is careful to point out that the statute “commands” an “adjustment” between village and district — implying an end of one and beginning of another.
The defendant also points to the fact that chapter 516 of the Laws of 1928, under which it was established, did not restrict the Town Board to territory outside an incorporated village. The provisions of this law, as amended by chapter 86 of the Laws of 1930, are now contained in section 222.0 of the Nassau County Civil Division Act (L. 1939, eh. 273, as amd.; L. 1947, eh. 240, as amd.; L. 1962, ch. 932), which makes no mention that the territory of a village ceases to be a part of a sanitary district upon its incorporation. It is urged that since no such restriction is mentioned, section 202-c of the Town Law, as amended, providing for an administrative procedure to dissolve or diminish special districts, conclusively evidences that it was not the intent of the Legislature to permit a village to cease to be part of a garbage district after its incorporation. The district also suggests that it can only be diminished under the procedure stated in section 202-c of the Town Law, and sections 34 and 35 of the Village Law do not apply.
I cannot agree with this conclusion. The procedure outlined in section 202-c is not the exclusive means of dissolving or diminishing a district. The Legislature specifically recognized in section 3-354 of the Village Law that this may also occur by ‘ ‘ operation of law ’ ’.
In addition, section 190 of the Town Law must be considered, wherein procedures for the establishment or extension of districts by petition are set forth. In this section, villages are specifically excluded from new or extended districts unless “ on consent of the village expressed in a local law * * * subject to a referendum on petition ”. Thus, it again affirmatively appears that the Legislature must have recognized that a district such as we are here dealing with was intended to have complete jurisdiction and render its services in an unincorporated area, but not in an incorporated area. As pointed out *202 in Matter of Rinas (p. 420): “The obvious statutory plan as created by the Legislature was that special districts, such as water districts, should render services to areas outside of incorporated villages (Town Law, § 190), and that the villages should render such services within their territorial limits. (Village Law, § 89.) ”
Since the issue in this case revolves itself around the contract for 1966, I see no merit to the defendant’s position that the village plaintiff is not a proper party to bring this action. As pointed out above, section 89 (subd. 25) of the Village Law empowers the village to enter into a contract for garbage removal and disposal and this dispute is solely between the village plaintiff and the sanitary district defendant. Judgment is accordingly granted in favor of the plaintiff as demanded in the complaint.